MILLER, Judge.
In this workmen’s compensation case, plaintiff Wiley Leo Futrell appeals the trial court’s decision that he was able to return to work when compensation was terminated some ten months post accident. All expenses for medical treatment were paid by defendant. We affirm.
Plaintiff was employed as a “line” mechanic by Futrell Chevrolet, Inc. Chevrolet’s workmen’s compensation insurer was defendant Hartford Accident & Indemnity Company.
On November 21, 1968, this 52 year old plaintiff was changing points and plugs in a pickup truck. He was standing on a 16 or 17 inch high stool so that he could reach the distributor behind the motor. The stool slipped so he “just stepped off backwards” and his “leg popped”. He finished the day’s work without reporting the accident and returned to work the following day. He sought medical attention at noon. Defendant admitted the accident and that it occurred during the course and scope of plaintiff’s employment.
Plaintiff was treated by a general physician Dr. Webb Smith of Colfax on November 22nd, 25th and 29th, at which time plaintiff was referred to Dr. T. E. Banks, orthopedic surgeon of Alexandria. Dr. Banks saw plaintiff on December 3, 1968 and diagnosed a tear of the medial menis-cus of the right knee. Surgery was scheduled for December 10, 1968 and performed on that date. The meniscus was removed and an area °f chondromalicia which had pre-existed the accident was debrided.
Plaintiff was seen by Dr. Banks in the hospital for seven days following surgery. Dr. Banks then saw plaintiff as his patient on January 3, 17, February 7, 28, March 21, April 11, May 9, June 6, 27, July 23 and September 10, 1969. Physical therapy was prescribed and undertaken for a period in March and early April and again in late April and June. The physical therapy was prescribed when atrophy of Y inch was found in plaintiff’s right leg and on both occasions the atrophy was corrected.
On July 23rd, plaintiff was still carrying crutches. Dr. Banks found no need for this and told plaintiff to return to work with the restriction that he was not to squat or climb ladders. On September 10, 1969 plaintiff was discharged to return to work with a restriction against “prolonged squatting.” He graded plaintiff’s disability as approximately 10% of the right extremity “due to the limitation on squatting.” Tr. 100. Dr. Banks was of the opinion that plaintiff could perform his work as a mechanic.
Dr. Banks saw plaintiff again on October 22, 1969 and on May 15, 1971. There was no change on the first visit, but atrophy of Yz inch was found on the second. X-rays taken on May 15, 1971 showed “that the changes had not demonstrated any deterioration in the bony components of the knee since the original x-ray.” Tr. 102.
Dr. Banks found no swelling on January 17, 1969. Except for slight swelling found on May 9, 1969, no physician noted swelling after that date. Yet plaintiff testified that continuous swelling was a real problem to him.
Dr. W. H. Heath, general surgeon of Alexandria, did not testify. Plaintiff in *674 troduced a February 25, 1970 letter from Dr. Heath to plaintiff’s counsel in which the Doctor stated that he had tried to help plaintiff for the past few months; that he “had examined this knee, but not treated it, and I believe that if this is coming to litigation it would be wise for him to get the knee evaluated by a disinterested qualified orthopedist and not by a general surgeon.”
Dr. Harry F. Jones, orthopedic surgeon of Shreveport, was not available to testify either by deposition or at trial. His reports of April 28 and May 6, 1970 were introduced in evidence. He saw plaintiff at plaintiff’s counsel’s request for purposes of examination on March 16, 1970. The examination
“revealed marked chrondromalacia of the retropatello surface as well as the femoral condyle. I discussed this situation quite frankly with Mr. Futrell suggesting to him that if his knee prevents him from working and further restricts his activities that he then should have a pa-talectomy carried out and a Mangnusen joint De bridement in order to salvage this knee so that he could work with it in the future.”
The report continued with the statement that plaintiff said he would “think this over and be back in touch with me.” Plaintiff did not return to Dr. Jones.
Dr. Ray J. Beurlot, orthopedic surgeon of Alexandria, saw plaintiff on April 1, and on June 22, 1970. The first examination was for an evaluation for vocational rehabilitation and the second was at the request of plaintiff’s counsel. Dr. Beurlot’s deposition was taken in behalf of plaintiff but introduced in evidence by defendant. Dr. Beurlot found no swelling in plaintiff’s knee joint. He found that plaintiff had flexion to 100 degrees which is 10 degrees past the 90 degree angle of the knee joint. The thighs were equal and plaintiff’s right calf was one-half inch larger than his left calf. There was no evidence of weakness in either leg extensors. He found mild degenerative changes in the knee and no other abnormalities. He found that plaintiff could climb anything that did not require him to bend his knee beyond 100 degrees. When questioned with reference to plaintiff’s claim that his knee would “give way on him”, Dr. Beurlot concluded that “there was probably not much increased risk in that knee giving away with him as compared to his other knee.” Tr. 63. Dr. Beurlot thought that further surgery was not indicated and specifically that a patel-lectomy should not be performed. He concluded that plaintiff had an eight to ten percent disability of his right knee which would be a three to four percent disability of the body as a whole.
Dr. Austin W. Gleason, orthopedic surgeon of Shreveport, saw plaintiff for evaluation purposes only on October 7, 1970. Defendant pointed out that Dr. Gleason was not a board certified orthopedic surgeon while Dr. Banks and Dr. Beurlot were so qualified. Furthermore, defendant shows that Dr. Gleason opened his orthopedic practice in July of 1970 some three months before the examination.
Dr. Gleason found no swelling and that plaintiff was “in no distress”. The clinical examination and review of X-rays led to a diagnosis that plaintiff:
“had moderate degenerative arthritis of his right knee, particularly with disease of his patello-femoral joint, which is the joint between the patella and the femur.”
Dr. Gleason recommended excision of the patella and exploration of the knee joint. Dr. Gleason admitted that he didn’t know whether or not the condition was related to the injury because “I wasn’t his surgeon and I don’t know what his kneecap looked like.” Tr. 24. Dr. Gleason also admitted that surgery was recommended not because of his clinical and X-ray findings, but because of plaintiff’s complaints. Tr. 34A.
Plaintiff testified and demonstrated to the court that motion in his knee was limited to only twenty degrees of flexion. There was no swelling yet plaintiff and his *675 wife testified that his knee was swollen most of the time. The trial court found that plaintiff consciously exaggerated his complaints. Tr. 255.
In weighing the testimony of medical experts, ordinarily the opinions expressed by the treating physician are accorded more weight than those expressed by physicians who have made examinations for purposes other than treatment. Joyner v. L. L. Brewton Lumber Company, 171 So.2d 811 at 814 (La.App. 3 Cir. 1965). Furthermore, Dr. Banks’ and Dr. Beurlot’s opinions are accorded more weight because Dr. Gleason and Dr. Jones based their recommendations on plaintiff’s complaints rather than on objective findings.
The record supports the finding that plaintiff has a permanent disability (from the removal of the medial meniscus of the right knee) of eight to ten per cent of the right knee and that his only restrictions are from “prolonged squatting” (Dr. Banks Tr. 112) and from flexion below the right knee beyond 100 degrees (Dr. Beur-lot Tr. 79).
The trial court concluded that “plaintiff could return to his former occupation in (the Chevrolet repair shop) or any other automotive repair shop with modern equipment without having to squat or climb unless he wanted to do so.” This conclusion is supported by the evidence.
Although plaintiff testified that his employment required that he stoop, squat, lift and climb, he admitted on cross examination or it was established by other witnesses that he could sit on a stool rather than stoop or squat to work. It was also established that the shop was equipped with motor lifts and motor stands, transmission lifts and stands, hydraulic car lifts and jacks, dollies and that there was ample help readily available anytime a mechanic needed help on a specific lifting or climbing j ob.
The trial court’s decision that plaintiff could return to his prior employment with the Chevrolet company was correct.
But plaintiff shows that he reported back to work when Dr. Banks advised light work and that his job was not open to him. The trial court found that the Chevrolet company refused employment because of plaintiff’s drinking problem rather than because of his knee injury. That plaintiff had a serious drinking problem was not denied by plaintiff or his wife. We find no manifest error in this conclusion.
Plaintiff also contends that even if he could return to work at a well equipped repair shop, no such work is available in his area and he will therefore have to work in some shop which does not have sophisticated equipment.
Plaintiff offered testimony from two self employed mechanics who each operated their so-called “shade tree” shops without employees and without much equipment. There is convincing evidence that plaintiff would be handicapped if he attempted to work without the labor saving equipment available at the Chevrolet shop. -
This 52 year old plaintiff had been employed as a mechanic for 28 or 29 years. He had been shop foreman at the Chevrolet company for 14 of the 19 years he had been employed there. He was qualified to repair motors, transmissions and to install glass and accessories.
So far as the record shows, plaintiff had no experience in attempting to operate a “shade tree” mechanic’s shop. We find no merit to the argument that plaintiff is totally disabled because the work of a “shade tree” mechanic would require some squatting and climbing which his disability would prevent him from performing. It was established that this skilled employee could perform all the work of his prior employment.
Applicable here are the rules set forth in Joyner v. L. L. Brewton Lumber *676 Company, 171 So.2d 811 (La.App. 3 Cir. 1965). In a workmen’s compensation case, as is generally true in other types of civil actions, a plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Plaintiff appellant has not established manifest error in the trial court’s finding that plaintiff failed to meet this burden of proof.
The trial court’s judgment is affirmed. Costs are assessed to plaintiff appellant.
Affirmed.