LOTTINGER, Judge.
This is an appeal in a Workmen’s Compensation case. From a judgment in favor of the defendant, the plaintiff has appealed.
The record points out that on December 16, 1969, plaintiff injured her back while working for the defendant, Patrina/Scian-na, doing business as Quick Shop Food Store in Bogalusa, Louisiana. The workmen’s compensation insurer of Scianna paid workmen’s compensation benefits in the amount of $915.60 and medical payments in the amount of $2,386.07. Liberty Universal Insurance Company, the insurer, subsequently went into receivership and the defendant defended this suit at her own expense.
The Trial Judge gave well written reasons for judgment, which we now quote:
‘Plaintiff sustained a back injury on December 16, 1969 while in the course and scope of her employment as a check-out, and stock clerk in the Quick Shop Food Store, when a box of goods fell on her knocking her to the floor.
The plaintiff was taken to the Bogalusa Community Medical Center where she was examined and treated by Doctor Richard Hortman. She was referred by him to Dr. Irving Redler, a neuro-sur-geon in New Orleans, Louisiana. After conservative treatment Dr. Redler performed a laminectomy on March 6, 1970, repairing a ruptured disc between the fifth lumbar vertebra, and the sacrum. Dr. Redler continued post-operative treatment until June 30, 1970. At that time he found as follows:
‘ . . . she was able to undress without any difficulty, and there was no spasm of her back muscles, and there was no deformity of the back, and as far as the flexion ability of her trunk, it appeared to be possible to about normal range, and the only thing that the patient lacked at that time was just the terminal few degrees of bending-forward and bending backwards. The straight leg raising tests were negative. When I pressed over the area of the incision, she said that she had some discomfort. I repeated an x-ray of her back at that time, and the only thing that was there was a little bit of the dye that we used from the myleogram, and I felt after I examined her on June 30 that she had obtained the maximum benefit from what I did for her. I thought that she could be discharged, and I thought that she could go back to her former type of work, and at that time I estimated apparent residual disability of ten percent of her back.’ Redler Deposition, page 17.
Mrs. Jones did not go back to work. She was paid compensation benefits until August of 1970 at which time they were terminated either because of the insurance company’s bankruptcy or Dr. Red-ler’s opinion. She claims that she still suffers excruciating pain, is unable to do even her housework, and has consulted a doctor at Charity Hospital with her back several times since June 30, 1970.
On the other hand, the evidence shows that approximately ten months after her operation Mrs. Jones bore her twelfth child. She consulted the physician at Charity Hospital pertaining to her pregnancy. She did not produce testimony of the doctor to show that she had consulted him for her back. In spite of her denial of ability to straighten her back or to walk without a limp, several witnesses testified to seeing her walking with no noticeable problems during the year between her operation and this time, and also to seeing her perform various tasks which required lifting and bending her back, such as carrying a bag of groceries and putting clothes in a *75 washer or dryer. Additionally, Dr. Red-ler again examined Mrs. Jones on May 4, 1971 and found as follows:
‘. . .1 saw that she was able to walk without any limp, and after she undressed, I found that there was no deformity of her back, and the muscles were not in spasm, and she had a normal lumbar lordosis. She complained of inability to bend forward and backwards as much as normal, and actually on bending forward, she would only do this for about 30 or 40 degrees, and in bending backwards, maybe about half the normal range. She said she just couldn’t do it, but as far as the straight leg raising tests were concerned, I could carry those out to 90 degrees, and also I had her sit up on top of the examining table for me while keeping her knees straight, and she would do this completely and, of course, I must infer from this that the spine is capable of full flexion. .’ Redler Deposition, page 18.
Obviously the test results of Doctor Red-ler in May of 1971 and the complaints of the plaintiff’s condition had not changed for the worse since his June 1970 examination, and the plaintiff was still able to resume her former employment based on his physical findings.
From the evidence presented, the Court does not believe the plaintiff has proved residual disability substantial enough to prevent her carrying on the same or similar work to that she was performing when the accident occurred. Clark v. Maryland Casualty Co., [La.App.] 223 So.2d 171. Accordingly, the Court will dismiss plaintiff’s claim for compensation. There appears to be a FORTY AND NO/100 ($40.00) DOLLARS bill still owed to Doctor Redler resulting in his treatment of Mrs. Jones. The defendant is responsible for this bill. In all other respects, the suit is dismissed at plaintiff’s cost.”
Dr. Redler testified that on the basis of his physical examination, he could not account for the plaintiff’s complaints of severe pain. He felt that she could do the same type of work as before the accident.
Other than Dr. Redler, the plaintiff presented lay witnesses who testified that she could not do the same things after the accident as before. Therefore, we have a highly qualified medical expert testifying that after all examinations could be made, the plaintiff was, in his opinion, able to perform the same work as before the accident. On the other hand, we have the plaintiff and several lay witnesses who without question testify that the plaintiff could not do the things she did before the accident.
We believe the rule is well .established that lay testimony is not to be considered where there is no serious dispute among the medical experts. There is no conflict in the medical testimony here.
The duty of the Court is to arrive at the truth to determine which side is correct. We have all endured pain on occasion, and yet could not find an explanation for this pain. This the medical experts will agree with. When we complain of pain, we must substantiate our pain in order to succeed in a court of law. The mere accusation of pain, however correct it may be, without some proof is not enough. In the instant proceeding, the Trial Judge viewed the witnesses, other than the medical expert, who testified by deposition, and realized that he was bound by the rules as applicable, in that proof of pain was lacking. Science tells us in the case at bar that there is no reason for the pain. By this we are bound.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal will be paid by plaintiff-appellant.
Judgment affirmed.