276 So.2d 271 (1973)
Wiley Leo FUTRELL
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY.
No. 52330.
Supreme Court of Louisiana.
March 26, 1973.
Rehearing Denied May 7, 1973.
*272 Gist, Methvin & Trimble, James T. Trimble, Jr., Alexandria, for defendant-respondent.
Law Offices of W. T. McCain, Robert L. Kennedy, Colfax, for plaintiff-applicant.
BARHAM, Justice.
The plaintiff, Wiley Leo Futrell, is suing his employer's insurer, Hartford Accident & Indemnity Company, for permanent total disability benefits under our Workmen's Compensation law. Futrell was employed by Futrell Chevrolet, Inc., as an automobile mechanic when on November 21, 1968, he suffered an injury to his right knee. Weekly benefits were paid by Hartford from November 22, 1968, to October 2, 1969, totalling $1575.00. Futrell Chevrolet also paid Futrell certain additional sums in the amount of $1004.00. The district court found that the burden of proof had not been sustained by plaintiff and dismissed his claim for permanent total benefits. On appeal that judgment was affirmed. 258 So.2d 672. The Court of Appeal in a per curiam on application for rehearing noted that Futrell was not entitled to any additional payments because of his partial disability.
The injury occurred while Futrell was working on a pickup truck, changing the points and plugs. He was standing on a stool to reach the distributor when the stool slipped out from under him causing him to step backward off it. He felt a popping sensation in his right knee. On the following day the knee was so swollen and painful that he went to see his doctor. When the treatment prescribed failed to give Futrell any relief, he was sent to Dr. Banks, an orthopedic surgeon. Dr. Banks diagnosed the injury to be a tear of the medial meniscus of the right knee with disuse atrophy, and recommended surgery. The surgery revealed a fraying of the middle third of the medial meniscus and some chondromalacia of the patella. The latter condition was determined as predating the accident. The meniscus was removed, and the area of the chondromalacia was debrided with a knife. Seven days after the surgery Futrell was released from the hospital as an ambulatory patient on crutches. Nine months later, when Futrell was discharged by Dr. Banks, the injury was found to have left Futrell with a 10 per cent disability of the right extremity. Dr. Banks was of the opinion that Futrell could return to work as a mechanic, but with a restriction on squatting, lifting heavy items, and climbing.
Evidence of medical evaluation of Futrell's condition by three other orthopedic surgeons was introduced at the trial. Dr. Jones saw Futrell once on March 16, 1970, and found persistent pain and swelling in *273 the right knee joint. He concluded that Futrell suffered chondromalacia of the retropatello surface of the patella and the femoral condyles with degenerative joint disease, and it was his impression that this condition was posttraumic. He stated in his medical report "after due consideration of his [Futrell's] case that this condition will interfere with his work in his particular field and will most likely get serious in the future with continued use of his right knee". Further surgery was recommended by Dr. Jones.
Futrell consulted Dr. Beurlot on two occasions, April 1 and June 22, 1970. This doctor's diagnosis was degenerative arthritis of the right knee which he thought could have been aggravated by the trauma. It was his opinion that Futrell would have difficulty in performing repeated bending or stooping motions and in climbing.
The other orthopedic surgeon, although not Board certified, to see Futrell was Dr. Gleason. From his examination of Futrell on October 7, 1970, Dr. Gleason concluded that Futrell's condition was degenerative arthritis of the right knee with severe chondromalacia of the patella. He stated that this condition could be caused by the trauma, but that he could not state this definitely since he had not examined the knee at the time of the injury and the surgery. Dr. Gleason recommended surgery, and concluded that with the knee in its present condition Futrell would have difficulty lifting and bending.
The parties agreed by stipulation that an accident had occurred in which the injury complained of was sustained. The issue that is contested is the degree of the disability suffered by Futrell and its effect on his ability to return to the work of a mechanic. Futrell's position is that he is entitled to permanent total disability benefits.
Permanent total disability is defined as "disability to do work of any reasonable character" under R.S. 23:1221(2), but the jurisprudential interpretation of that provision is far broader than the language used. Louisiana's test, unlike the rule applied in almost all of the other states, is that an injured employee is deemed totally and permanently disabled whenever he is unable to perform work of the same or similar description to that which he performed before the accident. This rule was clearly established in Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932), when the court said: "The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer's service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform. * * *" See also Hughes v. Enloe, 214 La. 538, 38 So.2d 225 (1948); Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952); Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (1953); Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543 (1962); Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969). We find this interpretation best suited to our statutory scheme.
The medical evaluation of the percentage of impairment of function was judged to be about 10 per cent of the right extremity. This is, however, but one feature to be considered by the courts in determining whether the employee is totally and permanently disabled. * * *" The medical expert defines disability in terms of the physiological injury and its effect upon the performance of the mechanical *274 operations which the claimant can perform prior to and after the accident. * * *
"On the other hand, a court is called upon to determine disability according to a legal definition drawn by interpretation from the compensation statute furnished by the legislature. The law fixes disability in terms of loss of earning capacity, which includes the extent of the physiological impairment as only one factor. The function of the judge is much broader than that of the medical man, for loss of earning capacity, which is the eventual touchstone of all legal definitions of disability, can be determined only by reference to the state of the labor market, hiring practices, the humanity of obliging a man to work in pain, and other broad policy considerations which the physician is not equipped nor authorized to evaluate." Malone, Louisiana Workmen's Compensation § 272 (Supp.1964). See also Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6 (1938); Brannon v. Zurich General Accident & Liability Ins. Co., supra. (Emphasis supplied.)
In order to assess Futrell's disability it is necessary to examine the nature of the work performed by him as a mechanic. Futrell's own testimony explained that he was required to crawl inside the automobiles to work on the wiring under the dashboard, radios, and heaters; that he had to lift bumpers and fenders and hold them in place to remove and reattach them. He said that he often had to squat or use a creeper to crawl under the vehicle to do certain kinds of work, like transmission or brake work. The use of a stool and the climbing over the top of the radiator or the fender were necessary when working on some part under the hood of a truck.
In addition to Futrell's testimony about the nature of the job of a mechanic, six other mechanics testified at the trial. Three were called to testify for Futrellthe owner of an independent mechanic shop in the town, a former co-employee of the plaintiff at the Chevrolet shop who at that time worked in a different town, and an employee of the Ford auto service shop in the town. These three men were competent to testify about the only three shops that did mechanic work on automobiles and trucks in the town. All three testified that lifting, climbing, and squatting were required in performing the duties of a mechanic, and that the amount of such activity depended on the equipment available at the particular shop. The two shops that were part of automobile dealerships had additional modern equipment that lessens the demand for squatting. The three mechanics called by the defendant, all presently employed by the Chevrolet shop or formerly employed there, testified that little or no squatting was required at that shop because of all the modern equipment. They all stated, however, that they did still have to climb, lift objects, use a creeper, and make road service calls.
Even under the most modern of working conditions, like those provided in the service shop where Futrell was employed, he would not now be able to perform many of the functions required of a mechanic. The medical experts recommended a limitation on squatting, lifting, and climbing, and the testimony of all of the mechanics acknowledged that lifting and climbing were required even in the best of conditions. It should also be noted that with the modern equipment Futrell's earning power would still be affected. In his former employment he worked on a commission basis, and calling on others to assist him or do the job for him would have reduced what he could earn.
The degree of Futrell's disability must not, however, be judged by placing him in ideal working conditions. The test must be whether the injury has substantially decreased Futrell's ability to compete with ablebodied mechanics in the general labor market. Stieffel v. Valentine Sugars, Inc., supra, involved a right-leg injury to a stenographer-clerk; Brannon v. Zurich *275 General Accident & Liability Ins. Co., supra, was a case where a carpenter had to have the patella of the left knee removed; Lindsey v. Continental Casualty Company, supra, concerned a farm equipment mechanic who lost the sight of his right eye; and Lawless v. Steel Erectors, Inc., dealt with a back injury to an ironworker. In all of these cases the employee was found to be totally and permanently disabled because the injury suffered made the employee unable to complete with others that do work of the same nature.
This particular case illustrates why the test must be applied to general working facilities in Futrell's particular field of endeavor, rather than to the particular facilities offered in his former employment. Futrell was not reemployed by his employer, although the reason given was not connected with the injury he suffered. The facilities available in other mechanic shops vary greatly, and the fewer labor-saving devices available the more demanded of the mechanic. If Futrell sought employment at any of these less well equipped shops, he would have to limit what he could do, and therefore would not have the bargaining power of the ablebodied mechanic.
Furthermore, Futrell stated that there was a limitation of motion of his right leg and the degree it could be bent without forcing his leg with his hands. He walks with a limp. Medical and lay testimony support both of these facts. Futrell, his wife, and a neighbor all testified of pain and swelling of Futrell's right knee, and stated that he had a tendency to lose his balance. These aspects of his injury would also seriously affect Futrell in any type of working circumstance.
Considering the medical evaluation of the impairment of the functions of Futrell and the other aspects which illustrate his loss of earning capacity, we find that Futrell is totally and permanently disabled and entitled to the full benefits provided in R.S. 23:1221(2). It now becomes necessary to decide whether the employer's additional payments totalling $1004.00 were gratuitous or in the nature of supplemental compensation payments. In the latter case the defendant would be entitled to credit for those payments.
Under R.S. 23:1206 voluntary payments made by the employer "which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments". This case does not present the usual question of whether the wages paid were earned or unearned. See Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 377 (1962). Here Futrell never did return to work for his employer, Futrell Chevrolet, in any capacity. The question raised is whether the payments by Futrell's employer are to be deducted as prepaid compensation or treated as mere gratuities.
By stipulation the parties acknowledged that $1004.00 was paid by the employer at a time when compensation payments by the insurer were also paid. Futrell received from his employer $35.00 per week for 26 weeks plus a $94.00 bonus. Credit for wages paid is generally computed by deducting from the total number of weeks for which compensation is due those weeks when the employer paid the injured employee any amount which at least equaled the compensation due. Amounts paid weekly in excess of the compensation due cannot be credited as payment for future weeks. 2 Larson, Workmen's Compensation § 57.47. Here the weekly payments made by the employer were in excess of the actual compensation payments due which were paid by the insurer. Thus, without any evidence to show a contrary intention between the employer and the *276 employee, there can be no credit for weeks of payments by the employer when those weeks must already be counted as credit by the payment made by the compensation insurer, the defendant. Here the only evidence about the circumstances surrounding the payments by the garage is an acknowledgment by the owner that he "felt kind enough towards him [the plaintiff] to give him $35.00 a week extra". Such evidence indicates a gratuity and not an intention to pay supplemental compensation. 2 Larson, Workmen's Compensation § 57.44.
We reverse the judgment of the Court of Appeal and award to the plaintiff, Wiley Leo Futrell, permanent total disability benefits as provided in R.S. 23:1221(2), against Hartford Accident & Indemnity Company, with a credit to be given the insurer of $1575.00, the total amount of the payments previously made. The defendant is to pay all costs.
HAMLIN, C. J., dissents, being of the opinion that the result reached by the Court of Appeal is correct.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents. Particularly, I find no basis to overrule the trial court determination of the extent of plaintiff's disability.
SANDERS, Chief Justice (dissenting).
The plaintiff in this action, an automobile mechanic suffering an 8 to 10% permanent disability of the right knee, was denied permanent and total workmen's compensation benefits in the trial court, and that judgment was affirmed by the Court of Appeal, 258 So.2d 672, both courts holding that the plaintiff could perform all duties required of a mechanic at any repair shop with reasonably modern equipment. I agree with these holdings and record my dissent to the majority opinion.
The operative facts are clear. Futrell, a "line" mechanic at Futrell Chevrolet, Inc., in Colfax, Louisiana, injured his knee on November 21, 1968, when a work stool slipped from under him. His physicians diagnosed a tear of the medial meniscus and surgically removed the cartilage on December 10, 1968. The surgeons also found and debrided a pre-existing area of chondromalacia of the patella. On July 23, 1969, the treating orthopedic surgeon, Dr. Banks, recommended that the plaintiff return to work subject to restrictions against squatting and climbing of ladders. On September 10, 1968, the same physician discharged the plaintiff to return to work, imposing a restriction only upon "prolonged squatting." Dr. Banks rated the permanent disability at 10% of the right extremity.
Although there is conflicting medical evidence as to this disability and as to the advisability of further surgery, both lower courts found that the disability did, in fact, lie within 10% of the right extremity. The trial court observed that the plaintiff exaggerated his symptoms. The record provides no basis for disturbing these factual findings.
Hartford, insurer of Futrell Chevrolet, paid weekly benefits from November 22, 1968 through October 2, 1969, at the rate of $35.00 per payment. These payments totaled $1,575.00, a sum in excess of the $1,423.00 due plaintiff under the permanent-partial disability schedule. In addition, his employer paid an added $35 per week, as a gratuity, from December 9, 1968 through June 2, 1969, plus certain bonuses. These payments totaled $1,004.00.
Thus, permanent partial benefits having been fully paid, the plaintiff is entitled to further relief only if he is permanently and totally disabled within the meaning of those terms as used in the Compensation *277 Statute. Both lower courts concluded that, within the facts of this particular case, a 10% functional disability of the right extremity which includes a restriction against prolonged squatting would not substantially impair the performance of any of the plaintiffs duties.
In reaching this conclusion, both courts correctly held that the plaintiff was a skilled worker and imposed the test required by the jurisprudence. As this Court held in Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543 (1962):
"Under the jurisprudence it is established that a skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation."
The plaintiff at bar is a "shop" mechanic. The Futrell Chevrolet repair facility, like any reasonably equipped modern shop, is outfitted with motor lifts, motor stands, transmission lifts and stands, hydraulic car lifts and jacks, dollies, and much other gear. Thus, both trial and appellate courts found that "plaintiff could return to his former occupation in the Chevrolet repair shop or in any other automotive repair shop with modern equipment without having to squat or climb unless he wanted to do so." Insofar as the record shows, all of plaintiff's employment has been in this type of shop.
The evidence does not support plaintiff's final argument that the lack of work in modern shops will force him to work in "shade tree" shops, that is, shops that do not have reasonably modern equipment.
For the reasons assigned, I respectfully dissent.