WATSON, Judge
(dissenting in part and concurring in part).
I respectfully dissent from the reversal of the trial court’s finding of permanent and total disability. I will recapitulate the facts and the testimony before discussing the principles of law which, in my opinion, should be applied.
On November 8, 1971 while the plaintiff was employed as a carpenter’s helper by the employer, he injured his left index finger. This, initial injury was treated by Dr. Elmo LaBorde and resulted in the surgical amputation of a portion of the index finger at a point just toward the body side of the digital joint, that is, the end joint of the index finger. He continued to have difficulty and pain in the finger and to lack the ability to flex the finger. He was referred by Dr. LaBorde to Dr. Darrell L. Henderson of Lafayette, who is an 'expert in plastic and reconstructive surgery with a subspecialty in surgery of the hand. Dr. Henderson first saw the plaintiff ,on February 7, 1972. On the following day Dr. Henderson performed an operation which consisted of a revision of the amputation stump, shortening the bone by 0.8 of a centimeter and resecting the nerves and tendons of the finger.
Subsequent to this operation plaintiff was treated by Dr. Henderson, who saw him on several occasions on which he continued to complain of pain on the end of his finger. Due to the problems plaintiff was having it was concluded to remove the remaining portion of the finger and that was done on April 21, 1972. The finger was removed ■ to the joint where the finger joins the hand. This is known as the metacarpal-phalangeal joint.
Dr. Henderson continued to follow plaintiff’s condition at intervals following the operation, seeing him last on July 10, 1972. (TR. 29). He described the stump and the hand as looking good, stated that plaintiff had told him that he had torn down a house and was working around his farm, but indicated that plaintiff:
“Complained still of some weakness in the hand and the discomfort when he used it strenuously, but he was the best that he had been.” (TR. 29).
On July 10, 1972 plaintiff was discharged by Dr. Henderson.
As to the extent of Bearb’s recovery, the Doctor testified as follows:
“Well, he had reached as much recovery as he would get from benefit of medical care. He’d probably continue to improve over the next year. That is, that he did not necessarily need medical attention for this. That this would be a practical time where he could be discharged. Usually any scaring, incision will continue to heal for approximately one (1) year.” (TR. 30).
Dr. Henderson gave plaintiff a 23 percent disability of the hand as a whole and indicated that his hand would be 20 percent weaker than before the loss of the finger.
*539 As to ability to work, Dr. Henderson testified under cross-examination that “ . . . I think he should be able to work as a carpenter.” (TR. 44). He added that plaintiff might have to perform tasks “ . . . a little differently and handle his hand a little differently.” (TR. 44).
The doctor went into considerable detail on the various tasks which plaintiff would be required to perform as a carpenter or as a carpenter’s helper, and his opinion was that the plaintiff could perform the various tasks but that it would be somewhat more difficult by reason of the missing finger.
Plaintiff’s testimony concerning his disability indicated that he did not think that he could do the same work as before the accident. For example, he testified that one of his principal tasks was putting up sheetrock on ceilings and walls. He stated that he would grab a nail, hold the sheet-rock and nail it, but since the accident, he cannot hold the sheetrock and nail it.[1] He testified that after the accident he experienced difficulty in holding a board while attempting to use a handsaw. He stated that he could not complete the task of building a small building at his home. Also he stated that he suffers pain in his hand when attempting to climb a ladder, a necessary function of his job.
Also testifying for plaintiff was Howard Duncan, a licensed general contractor, who had been in the construction business for a period of 25 years. The trial court recognized him as an expert in the field of general contracting. The substance of Mr. Duncan’s testimony was that he would not employ plaintiff as a carpenter or as a carpenter’s helper because there are plenty of others who are not handicapped and who are available for work.
Plaintiff’s wife testified, but she did not add any evidence of importance. No other physicians appeared, although it was stipulated that the failure to call Dr. LaBorde would not create any presumption against plaintiff.
The only witness testifying on behalf of employer and insurer was Lloyd Albright, the manager of the insurance adjusting company which handled the claim on behalf of Rockwood Insurance Company.
On the basis of the facts presented, the trial court found, following a motion for new trial, the plaintiff to be totally and permanently disabled, awarded him compensation on that basis, and additionally awarded penalties and attorney fees.
It is apparent that the trial court did not find that the evidence established that plaintiff was able to return to his former work. The situation presented to the trial court was that of a physician, obviously an expert in his field, who testified at considerable length concerning the duties of a carpenter and a carpenter’s helper, a field in which the physician had not qualified as an expert.
The trial court did not rely on testimony of a lay witness as suggested by the defendants but considered the testimony of an expert witness. The trial court apparently chose to accept the testimony of the expert in the construction field, Duncan, who stated that, in his opinion, plaintiff could not get a job as a carpenter or as a carpenter’s helper because he would be unable to do the work as well as someone possessing all of his fingers.
As was stated by this court in White v. E. A. Caldwell Contractors, Inc., 276 So.2d 762 at 769 (La.App. 3 Cir.1973):
“ . . . the trial court’s findings and conclusions are entitled to great weight and will not be disturbed on appeal unless they are manifestly erroneous. *540 Brown v. Alien, 253 So.2d 611 (La.App. 3 Cir.1971).”
In concluding that plaintiff was totally and permanently disabled the trial court apparently relied on the theory of jurisprudence illustrated by Futrell v. Hartford Accident & Indemnity Company, La., 276 So.2d 271 (1973), where the Supreme Court pointed out that the degree of a mechanic’s disability must not be judged by placing him in ideal working conditions, but the test is “ . . . whether the injury has substantially decreased Futrell’s ability to compete with ablebodied mechanics in the general labor market.” 276 So. 2d 274. Futrell had a medically evaluated impairment of function of ten percent of the right leg. The Supreme Court stated that the opinion of physicians is “ . but one feature to be considered by the courts in determining whether the employee is totally and permanently disabled.” 276 So.2d 273. In the present case the issue boils down to whether a carpenter’s helper with nine fingers can compete with other carpenters’ helpers who have ten. The trial judge concluded on the evidence presented that he could not. I cannot say that he manifestly erred.
The weight to be accorded the opinion of a physician was reviewed in Johnson v. Travelers Insurance Company, La., 284 So.2d 888 (1973), where the Supreme Court recognized that the opinion of the treating physician is to be given great weight, and that a medical witness may testify on questions of medical causation, but that his opinion on such matters as residual pain and its legal consequences is not conclusive. Therefore, it appears to me that the question of whether a person losing an index finger is totally and permanently disabled from working as a carpenter’s helper may be resolved on the basis not only of a physician’s opinion but on the opinion of those familiar with the construction industry.
I believe that reference to the opinion of an expert in a trade or profession on the question of whether a person missing a finger (or otherwise handicapped) is disabled or is unable to compete in the labor market is not only devoid of error but is a desirable procedure in some circumstances. I, like the trial court, would have preferred a broader expression of expert opinion, but Duncan was the only expert presented and his testimony is uncontra-dicted.
Therefore, I find no manifest error in the conclusion of the trial court in awarding total and permanent benefits, and I dissent from the reversal of this portion of the trial court’s judgment.
As to the award of penalties and attorney’s fee, I concur.

. It is obvious that a carpenter or carpenter’s helper missing his left index finger has available only the middle finger and his thumb to hold a nail. This leaves only the ring finger and the little finger to hold the sheet-rock or a board or whatever is to be nailed. This would present a difficult task at best.