EUGENE E. LEON, Jr., Judge Pro Tem.
The Plaintiff-Appellant, Tyree Lions, while employed by T. L. James & Company, Inc. as a common laborer was injured while in the course and scope of his employment. Aetna Casualty and Surety Company was the workmen’s compensation insurer of T. L. James & Company, Inc. at the time of the injury, and as such paid to Appellant compensation benefits totalling three thousand, one hundred sixty-four and no/100 ($3,164.00) dollars and paid all medical expenses to date. The appellant at the time of his injury was earning One Hundred and no/100 ($100.00) dollars per week.
T. L. James and Company, Inc. are road builders and at the time of appellant’s injury were constructing roads on the Mississippi Gulf Coast. Appellant’s job at the time of his injury was that of blowing out seams in the concrete, by means of a blowing machine and a blow pipe. It was his job to keep the seams clean. Appellant was struck by a vehicle while doing the job assigned to him by his foreman. This ac *721 cident happened on July 24, 1970. Immediately after the accident appellant was taken to Memorial Hospital in Gulfport, Mississippi and on July 25, 1970 was referred to Doctor Ray Haddad, an orthopedic surgeon, in New Orleans, Louisiana.
Dr. Haddad testified that he had appellant admitted to Touro Infirmary Hospital in New Orleans, La. and after examination, he found appellant to have a rather severe injury and fracture involving the right knee. Surgery was necessary and the surgical procedure carried out on July 25, 1970. Dr. Haddad performed an elevation, as much as possible, of a depressed fracture of the medial tibial plateau, an ar-throtomy of the knee and the meniscus or medial cartilage of the knee was excised. The fractures were placed back together and fixed as well as possible with one large screw, placed from the side and one smaller screw placed from the front. He was discharged from the hospital on August 5, 1970. He was then admitted to the rehabilitation center on August 20, 1970, where he received therapy until September 25, 1970. On October 2, 1970 appellant’s range of motion had improved from 0% to 170%. In January, 1970, Dr. Haddad testified, “I had let him return to work.” On May 2, 1971 Dr. Haddad estimated that the appellant had about 25% permanent physical impairment' to the lower right extremity. This disability, Dr. Haddad stated, was on the basis of the removal of the meniscus, the fracture and the resultant 10% va-rus or bowlegged deformity and limitation of motion.
Appellant was next seen by Dr. Haddad on September 5, 1972 and appellant complained of pain in the knee; that he was unable to work. He had about 2 to 21/2 inch atrophy of the right side, in the quadriceps muscle. Atrophy according to Dr. Haddad, is generally due to disuse or lack of exercise. There was no fluid in the knee which, again, according to Dr. Had-dad is a very good sign.
On September 25, 1972, in the hospital, Dr. Haddad removed the two screws from appellant’s knee and on November 7, 1972 Dr. Haddad discharged appellant and it was his opinion that appellant had the ability to return to his prior occupation, as a common laborer, and that he could do the work that he had done before.
The appellant was then sent to Dr. Walter H. Brent, Jr., orthopedic surgeon, in the city of New Orleans, for an examination and report. Dr. Brent saw the appellant on two occassions. His findings, insofar as appellant’s disability, were almost the same as Dr. Haddad’s and it was his opinion that the appellant had approximately a 30% partial permanent disability to his right lower extremity.
However, Dr. Brent further testified that appellant was unable to go back to laborious type of work and he based his findings on being told by appellant that he was required to do a substantial amount of climbing or stooping or squatting.
It is interesting to note that both doctors testified that appellant did not need a cane for walking and Dr. Brent further testified that the cane only gave him security.
Medical testimony in a workmen’s compensation case is of primary importance in determining a claim for disability and if there is no conflict in medical testimony, then lay testimony should not be considered. Smith v. Continental Train Co., La.App., 275 So.2d 817.
Mr. Jake Norman, a foreman for T. L. James and Company, Inc. for twelve years, was appellant’s foreman for four • (4) months prior to his injury. It was his testimony that in this type of construction, road building, there is no climbing, no lifting of anything heavier than a shovel full of dirt, and very little squatting or stooping to be done by any of the laborers. Mr. Norman when asked if he would be able to use appellant as a general laborer with the 25% to 30% disability of his right leg, he answered, “Yes, Sir, I could. He is a good man.”
*722 Appellant testimony does not add much to his case. At no time in his testimony did he indicate that his work required him to do substantial climbing, stooping, squatting or walking.
The law is well settled that a plaintiff in a workmen’s compensation case has the same burden of proof as the plaintiff in other civil matters, and that burden is to prove the case by a preponderance of the evidence. Hebert v. Your Food Processing and Warehouse Company, La.App., 170 So.2d 765 (1965).
Appellant at the time of the accident was an unskilled common laborer. This was in fact stipulated to and later substantiated by a description of his job duties.
The lower Court was well satisfied that appellant was not in fact, totally and permanently disabled and the weight of evidence is such that he could compete with other laborers in the common labor market.
In Futrell v. Hartford Accident & Indemnity Company, La., 276 So.2d 271, the test for determining total and permanent disability of Mr. Futrell was based on the fact that Mr. Futrell was a skilled worker.
“Total disability for the common laborer is not determined by the same criteria used in the case of the skilled or semi-skilled worker. As pointed out in Malone, Louisiana Workmen’s Compensation, Section 375, the rule that the skilled or semi-skilled worker is regarded as totally disabled when an accident caused the loss of physical faculties, which has enabled him to earn his living in a particular trade or calling, even though he is still able to qualify for a job of a different nature, does not apply to wholly unskilled or common laborer. The disability suffered by the common laborer must be evaluated in terms of its relative effect upon the victim’s ability to obtain work of any reasonable character and not necessarily the same type of work in which he was engaged at the time of the accident in the flexible market for common labor.” Flowers v. E. M. Toussel Oil Co., La.App., 190 So.2d 147. In the Flowers’ case the injury was to a knee and the Court held him to partially permanently disabled.
In Moreau v. Employers Liability Assurance Corp., Ltd., La.App., 180 So.2d 835 the Court stated that an employee will be considered to be disabled within the meaning of the Workmen’s Compensation Act only if the pain is “substantial, appreciable, considerable, significant, great, true real pain, so intense as to hinder the worker’s fulfillment of his duties, or of such a substantial nature that it would be unreasonable and unjust to deny employee compensation and thus require him to work with that severe pain because economic necessity obliges him to do so.” There is no proof that appellant fits this test.
The appellant is not “substantially handicapped” in competing in the common labor market and cannot be considered totally and permanently disabled. Therefore, the decision of the lower Court is affirmed.
Affirmed.