BLANCHE, Judge.
The defendant, Davidson Sash and Door Company, appeals a judgment of the Nineteenth Judicial District Court which declared that Henry Lewis, Jr., appellee, was entitled to workmen’s compensation benefits in the amount of $49 per week for a total of 500 weeks, subject to a credit for those benefits already paid. Ip addition, defendant was to pay all costs of court and expert witness fees. We affirm.
Plaintiff Lewis, a right-hander, suffered a laceration to the ring finger of his right hand in the course of his employment with Davidson on February 28, 1973, when a co-employee attempted to operate a table power saw that Lewis had been using. He was treated exclusively by Dr. Joseph A. Morgan, orthopedist and hand specialist, who performed two surgical procedures before discharging the plaintiff on July 1, 1974, with disability of 75 percent of the finger, or 10 percent of the entire hand. Temporary total benefits were discontinued *801 on July 10, 1974, and the present suit was then instituted seeking total and permanent disability benefits.
The trial judge found that even though the plaintiff was classified as a laborer by Davidson, it was “obvious that Mr. Lewis had the skill and training to raise him to the level of at least a carpenter’s helper.” (Reasons, p. 12) This conclusion was drawn from the fact that the plaintiff received nine months . of carpentry training by Job Corps., and that the type of work he performed for Davidson required him to use many of the hand tools and skills used by carpenters. Based upon the evidence, we find no manifest error in this conclusion.
The trial judge observed that the plaintiff’s finger was continuously bent at a 90-degree angle and that he could not straighten it out. It also appeared that he could not fully bend the finger when he attempted to make a fist.
Dr. Morgan, the only medical expert to appear, was of the opinion that the plaintiff could return to the type of work that he performed prior to the accident but with some limitations. The trial judge, however, asserted that medical opinion as to disability is but one of several considerations that a court must analyze in making a legal determination of whether or not an employee is totally and permanently disabled, citing Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271 (La.S.Ct.1973). According to Futrell, he noted that the court must also consider the “state of the labor market, hiring practices, the amount of pain that an employee must endure if he returns to work, and other consequences of the injury.” (Reasons, p. 13)
After acknowledging that other factors are to be considered in addition to medical disability, the trial judge considered the testimony of the plaintiff with reference to the amount of difficulty he had in working. The plaintiff could no longer grip a hammer with the degree of strength required to work at a fast pace all day, and, in addition, the vibration of hammering caused pain in the finger. Because of the crooked position of the finger, the plaintiff was unable to quickly climb ladders, grasp the common tools of his trade, or carry materials quickly from one site to another. The plaintiff was no longer working as a carpenter’s helper -at the time of trial because he allegedly could not function properly.
The judgment also considered testimony from Bobby J. Smith, an expert in carpentry work and also the Training Director for the Baton Rouge Carpenters’ Joint Training Committee, a body composed of representatives of both the Carpenters’ Labor Union and Contractors’ Management Association. Smith was in charge of training men to be carpenters. He also administered tests to them prior to training to determine their aptitude for the trade. The judge used Smith’s testimony for the purpose of determining how the injury to the. plaintiff’s finger would affect his em-ployability.
Smith was of the opinion that the disability would definitely affect plaintiff’s earning capacity. He stated that even if plaintiff were a union carpenter (which he is not), they would have difficulty placing him on a job with such a handicap, as he would not be a “full carpenter.” Smith asserted the reason the plaintiff’s employability would be reduced was that the finger would hinder his use of carpentry tools and limit what he could do with them. He opined that plaintiff would be better off without the finger. In that regard, he recalled from his experience in working with men who had lost a finger or fingers that the absence of a finger reduced the ability and speed with which those men could work. He also noted that in today’s job market the Occupational Health and Safety Act makes an employer wary of any physical difficulty in the men that they consider for employment and, therefore, the condition of the plaintiff’s hand would *802 greatly affect his employability under the Act.
With the foregoing considerations in mind, the trial judge awarded compensation for total, permanent disability.
The defendant contends that the plaintiff suffered only a partial disability, and since he has already received temporary total benefits in excess of the partial member benefits provided for in LSA-R.S. 23:1221, the defendant is, therefore, no longer liable to the plaintiff.
We are of the opinion that Futrell controls the instant case. There, one of the four examining physicians would have allowed the plaintiff to return to work. The other three did not declare him totally disabled but instead recommended further surgery and presumably would have reevaluated his condition thereafter. The Court concluded that the import of the medical testimony was that the plaintiff suffered 10 percent permanent impairment of function of the right leg. They were, therefore, faced with deciding whether or not this 10 percent impairment was total and permanent within the meaning of the workmen’s compensation law. To answer this question, they began by observing that the medical evaluation was “but one feature to be considered by the courts in determining whether the employee is totally and permanently disabled.” The Court continued by quoting from Malone, Louisiana Workmen’s Compensation, § 272 (Supp. 1964), as follows:
* * The medical expert defines disability in terms of the physiological injury and its effect upon the performance of the mechanical operations which the claimant can perform prior to and after the accident. * * *
‘On the other hand, a court is called upon to determine disability according to a legal definition drawn by interpretation from the compensation statute furnished by the legislature. The law fixes disability in terms of loss of earning capacity, which includes the extent of the physiological impairment as only one factor. The function of the judge is much broader than that of the medical man, for loss of earning capacity, which is the eventual touchstone of all legal definitions of disability, can be determined only by reference to the state of the labor market, hiring practices, the humanity of obliging a man to work in pain, and other broad policy considerations which the physician is not equipped nor authorized to evaluate.’ ” (Futrell v. Hartford Accident & Indemnity Company, 276 So.2d at 273, 274)
Since the Court has already concluded that Futrell suffered a ten percent physiological impairment of function, they turned to examine the nature of the work performed by him as a mechanic in order to fully assess the effect that the disability would have upon his capacity to perform work of the same or similar character. After studying Futrell’s own explanation of the requirements of his work, the Court considered the testimony of six other mechanics, all from the general area of the plaintiff’s employment. The purpose of their testimony was to set forth the working requirements of- the average mechanic in the locale in which the plaintiff lived. The Court then proceeded to evaluate Fu-trell’s ability to compete with these able-bodied mechanics in the general labor market in view of his work-induced disability. The Court stressed that the comparison must be made with the general working facilities in the particular field of endeavor, rather than to the particular facility offered by his employer. Finding Futrell’s ability to compete impaired, the Court awarded total, permanent disability benefits.
In the instant case, the trial judge similarly utilized the testimony of layman *803 Smith to evaluate the effect that the established impairment of function would have upon the plaintiff’s employability. Smith gave no opinion concerning the medical degree of disability of the plaintiff but simply narrated the effect of the obvious disability upon similarly situated persons in the job market. Futrell depicts the law as it now stands, and as it clearly sanctions “reference to the state of the labor market, hiring practices,” etc., by a trial judge in determining whether or not a workman is disabled under the workmen’s compensation statute, we find no error in the application of that principle in the instant case. Clearly, the testmony of Smith was not considered as establishing a disability, but rather it was utilized to interpret the effect of the already established disability upon the plaintiff’s employability. For that reason, the instant case is in harmony with the guidelines set forth in Futrell.
The defendant contends that the trial judge erred in finding total, permanent disability and argues that the error resulted when the judge relied upon the lay testimony of Smith and that lay testimony was inadmissible since there was no conflict in the medical testimony, citing Lee v. Royal Indemnity Company, 149 So.2d 606 (La.App. 1st Cir. 1963), writ refused, 244 La. 209, 151 So.2d 689 (1963), and Jones v. Quick Shop Food Store, 263 So.2d 73 (La.App. 1st Cir. 1972). While the rule prohibiting lay testimony where there is no material conflict in medical evidence addresses itself more to the weight to be accorded to such lay testimony rather than to the admissibility itself, Lee, supra, the cited cases are inapplicable to the instant case.
In both Lee and Jones the plaintiffs sought to use lay testimony to establish physical disability, whereas in the instant case there is no dispute as to the physical disability of Lewis. As noted hereinabove, the layman Smith testified only regarding the effect that the disability would have upon Lewis’ employability. This follows the intent of Futrell, and we do not find that Lee and Jones are in conflict therewith.
As we find neither error of fact nor law, the judgment of the trial court is hereby affirmed, at cost of appellant.
Affirmed.