359 So.2d 720 (1978)
Sidney A. DUFFOUR
v.
The HARTFORD CASUALTY INSURANCE COMPANY and X-Ergon Corporation.
No. 8988.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
*721 Kronlage, Dittmann & Caswell (Charles A. Kronlage, Jr.), New Orleans, for plaintiff-appellee.
Ethel Harriet Cohen, New Orleans, for defendants-appellants.
Before LEMMON, SCHOTT and BEER, JJ.
LEMMON, Judge.
Defendant employer and its workmen's compensation insurer have appealed from a judgment awarding plaintiff benefits for total and permanent disability. The principal issue is whether he was totally disabled within the contemplation of the Workmen's Compensation Act prior to the 1975 amendments.

I
After working in the sales field for 20 years, plaintiff was employed by defendant in July, 1974 as a welding equipment salesman. His duties included calling on 8 to 20 customers daily, some calls requiring him to walk 6 to 8 blocks; carrying a sample case, which including contents weighed 38 to 45 pounds, and a propane torch and solder gun kit, which weighed an additional 18 pounds; and demonstrating the equipment by welding in bending or stooping positions and by hammering the welded area with large shop hammers.
In September, 1974 plaintiff experienced a sharp pain in his back when he lifted his sample case from his automobile. After *722 conservative treatment, followed by a myelogram, he underwent surgery for a ruptured lumbar disc in October.
Plaintiff recovered satisfactorily and was discharged in June, 1975 by the orthopedic surgeon as having reached maximum medical rehabilitation. The doctor assigned a 20 to 25% permanent disability of the body as a whole. Because of the probability of future settling of the joints, the doctor advised plaintiff to avoid laboring activity such as lifting, climbing, bending or carrying weights in excess of 25 pounds, since such activity would aggravate the condition and increase the probability that a fusion would be required.[1]
In the meantime defendant had terminated plaintiff's employment in January, 1975. Plaintiff testified that he sought other employment through newspaper advertising and employment agencies, but the prospects in the sales field were few because of his physical limitations. In February, 1976, more than a year after his termination, he finally obtained a job selling advertising, mostly involving telephone sales, and at the time of the February, 1977 trial he was earning higher wages at that job than he had earned with defendant employer.

II
Defendants contend plaintiff is not totally disabled because his diversified sales background would allow him to transfer to other sales fields which do not require lifting and carrying heavy weights. On the other hand, plaintiff argues that most sales jobs require carrying of demonstration kits, products or other sales materials, or lengthy periods of driving, or other activities beyond his limitations. Neither side presented employment experts to support these assertions.
Compensation liability is based on a medical disability which produces a degree of inability to earn wages. From a physiological standpoint plaintiff was only partially disabled. But from a legal standpoint a claimant is totally disabled if the partial disability produces total inability to do work of any reasonable character. R.S. 23:1221(2).
Under early judicial decisions interpreting this statutory language a workmen's compensation claimant was held totally disabled if he was unable to do work reasonably of the same kind and character as that which his training, education, experience and status in life qualified him to perform. Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932). And more recent decisions have emphasized Knispel's statement that a skilled employee is deemed totally disabled when he is unable to perform work of the same or similar description to that which he performed before the accident. Futrell v. Hartford Acc. & Indent. Co., 276 So.2d 271 (La.1973). The Futrell case further points out that the ultimate determination involves the effect of the partial disability on the worker's capacity to earn income.
Plaintiff meets the Futrell test if his field is regarded as the specialized or skilled selling of welding rods or any other product which requires the same type of stress from standing, lifting and stooping. And even if his field is regarded as unskilled general sales work, he may likewise be considered as totally disabled because his condition places him at a substantial disadvantage in competing with able-bodied workers in the flexible common labor market. Ball v. American Marine Corp., 245 La. 515, 159 So.2d 138 (1963).
The Futrell decision also noted that a worker's capacity to earn income should not be determined by considering his disability only under ideal conditions. When the capacity of the plaintiff in this case is considered in relation to the prevailing conditions in the market, as exemplified by his inability to obtain employment for more than a year following his termination, we cannot say that the trial court erred in concluding he was at a substantial disadvantage in competing with able-bodied salesmen for the available positions.
*723 When all of the pertinent factors are considered, there is sufficient evidence in this record to support the trial court's conclusion that plaintiff was totally disabled within the contemplation of the workmen's compensation act.[2] In this determination the trial court is properly accorded great discretion.

III
The trial court also awarded penalties and attorney's fees.
After paying maximum benefits for 88 weeks, defendant insurer reduced the payments to the minimum weekly amount. The insurer's representative testified that she reduced the amount because "the case was ready to settle" and the reduction would probably force settlement.
If plaintiff did not receive all compensation benefits to which he was clearly entitled under the evidence then available, the arbitrary decision to reduce benefits was a flagrant violation of the insurer's statutory duty, and the penalty provision was designed specifically to prevent such conduct. Therefore, since plaintiff was clearly entitled at least to continued benefits for either partial disability for 300 weeks under R.S. 23:1221(3) or for serious permanent impairment of the usefulness of a physical function for 100 weeks under R.S. 23:1221(4)(p), the penalty was properly imposed. Furthermore, the amount of $5,000.00 awarded for attorney's fees was not an abuse of discretion, based on the services apparent from the record and the results obtained.
Plaintiff's answer to the appeal requests additional attorney's fees for services required since the rendition of the trial court judgment. Such an award is proper, since defendants have still not paid the minimum amount to which plaintiff was clearly entitied. The requested amount of $500.00 is supported by the record.
Accordingly, the judgment of the trial court is affirmed. Additional attorney's fees in the amount of $500.00 are awarded for services necessitated by this appeal.
AFFIRMED, ADDITIONAL ATTORNEY'S FEES AWARDED.
BEER, J., dissents and assigns reasons.
BEER, Judge, dissenting.
Mr. Duffour earned his living as a salesman. His employment history spans over 20 years in this general endeavor. Consistent therewith, he took a job with X-Ergon Corporation as a welding equipment salesman and, within a couple of months of his having been employed by that company, experienced the incident which led to disc surgery which, in turn, resulted in the 20% disability estimate that now forms the basis of the majority's view that he is permanently and totally disabled.
His recovery from disc surgery was totally satisfactory, but the fact of the performance of the surgery itself was the basis for the percentage estimate of disability. Essentially the only objective medical result of the successful surgery was the admonition that Duffour should avoid excessive weight lifting and extensive climbing and bending.
Sales work which requires that the salesman, himself, actually carry an unusually heavy item on a more or less continuous basis could, perhaps, be described as one area of sales type work that could eventually cause Mr. Duffour to experience such a degree of discomfort as to reduce his effectiveness.
*724 Yet, with the exception of this extremely slight and unlikely to be experienced limitation, the broad spectrum of sales activities is still fully open to him.
In this technological era, some sales oriented jobs have clearly become skilled jobs filled by highly skilled personnel. However, there is no showing on this record that Mr. Duffour's skill is in any way impaired his only restriction, if any he has, is limited to sample case carrying under certain circumstances  and that only if the sample case be unusually heavy. These observations are not intended to belittle or make light of those restrictions within which Mr. Duffour must operate, and I take no issue with the conclusion that he may experience some modest percentage of diminution in his pre disc surgery ability to lift and carry sample cases of substantial weight. Yet, I am unable to reconcile myself to the majority's view that such restrictions can fairly be deemed to constitute permanent and total disability byat least in my view any fair and reasonable interpretation and application of those terms. The record seems to me to bear this out, for, at the time of trial, Mr. Duffour was actually earning a considerably higher income than that which he earned at the time of the incident which forms the basis for this lawsuit. Most compelling  in my view is the clear, uncontested fact that as he continues to earn at a much higher rate than before the accident, he is still working in the same general field sales.
Thus, the record confirms that Mr. Duffour, with his diversified sales background, had transferred his sales abilities from one product to another and, in so doing, had broadened his economic base appreciably. Is this an instance of permanent total disability? I think not.
Were he a manual laborer with the usual moderate estimate of percentage disability "of the body as a whole" that seems, almost invariably, to follow disc surgery (regardless of its totally successful result), I would be inclined to agree with the majority that such estimate of percentage disability might given the benefit of the considerable doubt that these type estimates elicit sufficiently restrict his ability to compete in the common labor market and, thus, establish his claim for permanent total disability.
But, here, where the record clearly and categorically underlines the fact that Mr. Duffour was obviously earning greater income at the time of trial than at the time of his alleged injury in the same field of endeavor  sales and where there is no evidentiary showing that whole broad spectrum of salesman-type jobs are seriously preempted by his alleged disability, I cannot agree in the finding that he is permanently and totally disabled from doing work of any reasonable character.
In my view, such a conclusion, based on the facts of this case, constitutes judicial distortion of that much misused and misunderstood phrase.
I respectfully dissent.
NOTES
[1] Two other orthopedic specialists examined plaintiff for purposes of evaluation, but their testimony was not substantially different from that of the treating physician.
[2] The author notes his view that the 1975 amendments were enacted specifically to resolve more equitably this type of case. During the weeks that the partially disabled employee is working and earning his regular wages, he has no need for compensation. But during the weeks that the employee is unable to work because of the medical disability or because his medical condition prevents him from obtaining employment in the market, he needs and is entitled to compensation, and the purpose of the statute is accomplished.

Application of seldom-used R.S. 23:1221(3), as in effect prior to the amendments, would have achieved substantial justice in this case, except for the limit of 300 weeks. The amended statute removes this limitation.