378 So.2d 594 (1979)
Byron F. LEMOINE, Plaintiff-Appellee,
v.
EMPLOYERS CASUALTY COMPANY and Peter Kiewit Sons' Company, Defendants-Appellants.
No. 7324.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Writ Refused February 15, 1980.
*595 Taylor, Porter, Brooks & Phillips, Frank M. Coates, Jr., Baton Rouge, for defendants-appellants.
Michael E. Kelly, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit. The issues on appeal are whether the trial court erred in (1) finding that the plaintiff is permanently and totally disabled, and (2) refusing plaintiff's demands for attorney's fees and penalties.
Plaintiff, Bryon F. Lemoine, was injured while in the course and scope of his employment as a heavy equipment field mechanic with defendant Peter Kiewit Sons' Company (Kiewit) in St. Francisville, Louisiana. The injury took place on January 17, 1977, at the River Bend Nuclear Power Plant site. Plaintiff was in the process of defrosting a frozen air line leading to the left rear brake of a "caterpillar" (a big earth mover) when the operator of the machine accidently shifted the machine into gear causing it to lurch forward unexpectedly. This sudden movement pinned plaintiff's right shoulder between the wheel of the machine and the frame. His shoulder was pushed backward and into his body resulting in the injury.
Immediately after the accident plaintiff filed an accident report and went first to the West Feliciana Parish Hospital where Doctor L. Campos injected plaintiff with *596 pain killing drugs and diagnosed his injury as a "muscle sprain secondary to trauma." Plaintiff left St. Francisville for Simmesport, to be treated by his own doctor and to be nearer his family. His family physician, Dr. Newell Gauthier, treated plaintiff on January 18, 1977, and diagnosed the injury as a "musculo-skeletal strain."
Plaintiff missed work from January 17, 1977, through March 21, 1977, for which he was paid workmen's compensation of $95.00 per week. Also, $3,800.00 in medical bills incurred by plaintiff were paid by Kiewit's compensation insurer, Employers Casualty Company. On March 21, 1977, plaintiff returned to work for Kiewit and labored until his employment was terminated on November 4, 1977. After his return to work plaintiff's shoulder pains recurred and hampered his work efforts at Kiewit.
Plaintiff secured new employment on January 18, 1978, as a mechanic for Stone and Webster Engineering Company and performed the same tasks there that he performed for Kiewit. However, the pain persisted and on February 6, 1978, plaintiff was examined by a neurosurgeon, Dr. C. Babson Fresh, who diagnosed his injury as a suprascapular nerve entrapment, a rather uncommon injury.
On February 15, 1978, plaintiff filed suit against Kiewit and Kiewit's compensation insurer, Employers Casualty Company, alleging that plaintiff was permanently and totally disabled as a result of the January 17, 1977 accident. The petition, later amended, sought workmen's compensation benefits of $95.00 per week from March 21, 1977, until plaintiff's disability ceased. Also, plaintiff's petition sought penalties and attorney's fees.
After considering all the medical and lay evidence before it, the District Court found plaintiff to be permanently and totally disabled because plaintiff "has suffered substantial pain both on the job and at home, after he finished his day's work." The District Court also dismissed plaintiff's demand for penalties and attorney's fees. Defendants have appealed the judgment finding that plaintiff is permanently and totally disabled; plaintiff has answered the appeal requesting penalties and attorney's fees. We affirm.

PERMANENT AND TOTAL DISABILITY
The accident in this case occurred after the effective date of the 1975 amendments to the Louisiana Workmen's Compensation Law. Under the amended statute, an injured employee will be entitled to permanent and total disability benefits only if the employee is unable to:
"... engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience . . .."
La.R.S. 23:1221(2).
The jurisprudential rule prior to the 1975 amendment was that a workman who returns to work following his injury may still be considered totally and permanently disabled if he must function in substantial pain. Broussard v. Subsurface Completion Service, Inc., 338 So.2d 1217 (La.App. 3rd Cir. 1976). The jurisprudential rule remains the same even after the 1975 amendments. Phillips v. Dresser Engineering Company, 351 So.2d 304 (La.App. 3rd Cir. 1977), writ denied 353 So.2d 1048 (La.1978); Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978), writ denied 358 So.2d 645 (La.1978); Simmons v. State of Louisiana, Department of Transportation and Development, 368 So.2d 770 (La.App. 2nd Cir. 1979). As this Court stated in Rachal:
"... Our interpretation of the amended statute is that an injured employee is totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain. We feel that this interpretation reconciles the jurisdictional rule with the express terms of the amended statute." (Emphasis added)
*597 Whether a workmen's compensation claimant is suffering pain substantial enough to be disabling is a question of fact to be decided by the trial court on the basis of the preponderance of the medical and lay evidence. Newell v. U. S. F. & G. Co., 368 So.2d 1158 (La.App. 3rd Cir. 1979); Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977).
This is an unusual case because plaintiff is able to perform light duties as a mechanic without experiencing immediate pain. In earlier cases awarding compensation because of substantial pain the claimants all experienced pain while working, but there is no doubt that the pain Mr. Lemoine experiences at the end of the day when he returns home from work is a direct result of his using his right arm at work. Consequently, we do not regard Mr. Lemoine's claim as any less valid simply because the pain he suffers is sometimes delayed.
The preponderance of both the medical and the lay evidence establishes that plaintiff is unable to pursue any gainful employment without experiencing substantial pain. All of the medical reports confirm that plaintiff suffered an injury to his right shoulder region. Doctor J. Frazer Gaar, an orthopedist, treated plaintiff from February 9, 1977, to March 16, 1977, while plaintiff was recovering from his injury. Doctor Gaar prescribed a regimen of conservative treatment consisting of heat, analgesics, and muscle relaxants. When Doctor Gaar discharged plaintiff he felt that the injury was a strain or contusion which was "about resolved." Doctor Gaar released him to resume normal working activities, partly because the doctor felt that the injury would soon be healed and partly because plaintiff was eager to return to work. However, Doctor Gaar expected plaintiff to "have a little discomfort which should abate with time and activity." Plaintiff returned to Doctor Gaar in October of 1977 and complained of shoulder pain which had persisted since he returned to work at Doctor Gaar's instructions.
Seeking further medical treatment, plaintiff went to Doctor C. Babson Fresh, a neurosurgeon, who examined or treated plaintiff at least nine times between February 6, 1978, and September 22, 1978. During the initial examination on February 6th, Doctor Fresh identified the injury as a suprascapular nerve entrapment. Doctor Fresh revealed that he seldom encountered this type of injury. He also speculated that the injury occurs much more often than it is diagnosed.
In his deposition dated October 12, 1978, several months before the trial, Doctor Fresh testified that with this type of injury plaintiff can physically perform his job every day but would be uncomfortable doing so and would experience pain in his right arm and shoulder region as a result of performing activities requiring him to use his right arm. Doctor Fresh further testified, and his medical reports corroborate his testimony, that as of September 22, 1978, when he last examined Mr. Lemoine, nothing further could be done from a diagnostic or therapeutic standpoint to reduce the pain. Doctor Fresh was of the opinion that the pain would eventually cease, but also noted that any injury to the nervous system may never heal or recover.
At the request of the defendants, Mr. Lemoine was examined by another neurosurgeon, Dr. Thomas B. Flynn. His findings failed to reveal "any other neurological deficit" besides the deficit found by Doctor Fresh. Doctor Flynn felt surgical intervention was not justified and felt Mr. Lemoine "is capable of resuming his former occupation without limitation." However, he did assign a 10% disability of the body as a whole. Doctor Flynn did not testify and his medical reports, which were introduced into evidence by agreement, do not address the issue of pain, a paramount issue in this case. Therefore, we find Doctor Flynn's medical reports to be inconclusive as to whether or not plaintiff can be gainfully employed without experiencing substantial pain.
The lay testimony also supports the finding that plaintiff suffered pain substantial enough to entitle him to permanent and *598 total disability benefits. At the time of trial plaintiff was a 39-year old, right-handed, heavy equipment mechanic with a high school education. He had been a heavy equipment mechanic for over twenty years. After the accident of January 17, 1977, plaintiff's work performance was often hampered by his injury. During his first sixteen months at Stone and Webster, Mr. Lemoine was absent 307 hours or about 38 days. He testified that almost all of the time he missed was on account of his shoulder and arm pain.
Plaintiff also described specific instances at work when he was unable to perform his duties as a mechanic. On one occasion he experienced immediate pain after swinging a 16 lb. mall, a routine part of his work.[1] As a consequence of this strenuous activity plaintiff was hospitalized in traction for about a week to relieve the pain. On another occasion plaintiff found it impossible to replace the starter in a truck. Also, plaintiff could do no work which required him to extend his arms outward or upward for any length of time without experiencing immediate or delayed pain. Mr. Lemoine's testimony as to work-related incidents was corroborated by his assistant.
The magnitude of Mr. Lemoine's pain is most graphically illustrated by his testimony of the disruptions in his normal life, which are consequences of his pain. This testimony was corroborated by Mr. Lemoine's wife and son. Plaintiff testified that he was an active sportsman before the accident. Now he no longer fishes because he cannot cast his line without experiencing pain. He no longer hunts because the impact of the shotgun or rifle against his right shoulder when the gun is fired is too painful for him to endure. Plaintiff cannot even drive his truck or his boat with his right hand without experiencing swelling and pain. For the same reasonpainhe discontinued the weekend work he did as a mechanic to supplement his income. Mr. Lemoine regularly takes pain pills and muscle relaxants when he returns home from work and sleeps on a heating pad because the pain is worse at night. Plaintiff and his wife no longer sleep together because plaintiff does not want his wife to put up with "my moans and groans."
Defendants argue that plaintiff is not permanently and totally disabled because there is no testimony in the record showing that he is not able to do light work. Our scrutiny of the record discloses, however, that when the evidence is considered as a whole the trial court was justified in finding, as it specifically did, that even light work causes plaintiff considerable pain. We find no manifest error and the decision is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Simmons, supra.
Defendants also argue that plaintiff's education, experience, training, and competence render him capable of performing supervisory analytical work related to equipment of all kinds. However, Mr. Lemoine has only a high school education plus a few weeks training at a John Deere training institute. He has had no other education and his only experience has been as a heavy equipment mechanic. To argue that he is capable of performing supervisory analytical work is mere speculation not supported by the record.
Defendants advance the testimony of Mr. David Q. Johnson, a Stone and Webster employee, to prove that plaintiff is employable in a supervisory capacity. Mr. Johnson, a rigging and equipment supervisor at Stone and Webster, testified that Mr. Lemoine was a good mechanic who performed his duties well and never complained to him of pain. He also testified that Mr. Lemoine would be in line for the job of master mechanic, a job which is similar to that of a *599 shop foreman. But Mr. Johnson also said that a master mechanic is a working mechanic and must be able to do the work; he is not simply an overseer of other mechanics. Further, Mr. Johnson seemed surprised to learn that plaintiff missed 38 days of work in his first sixteen months with Stone and Webster, and indicated that he felt that was a high degree of absenteeism. During the months that Mr. Lemoine's absences from work were frequent, the work at Stone and Webster was extremely slow. Mr. Johnson implied that when the work resumed at its normal pace, as it was soon expected to do, excessive absences by one in Mr. Lemoine's hypothetical position (that of a master mechanic) would not be tolerated.
Our opinion is not swayed by the defendants' arguments or evidence. We remain impressed by the fact that Mr. Lemoine, a right-handed mechanic, can do very little with his right hand and arm without later experiencing considerable pain and discomfort. No persuasive evidence has been presented to show that plaintiff can pursue any gainful employment without experiencing substantial pain. We therefore agree with the trial court that Byron Lemoine is permanently and totally disabled because he must work in substantial pain.
Defendants, of course, have the right to apply to the District Court for a modification of the judgment after six months, as provided for in La.R.S. 23:1331.

PENALTIES AND ATTORNEY'S FEES
We affirm the trial court's finding that plaintiff is not entitled to penalties and attorney's fees. The evidence supports the trial court's finding that defendants were neither arbitrary nor capricious in failing to resume workmen's compensation payments to plaintiff. Although plaintiff made demands upon the defendants to resume payments, the defendants were justified in relying upon medical reports issued by the treating physician indicating that plaintiff could return to work.

DECREE
For the above and foregoing reasons the judgment of the District Court is affirmed. All costs are assessed against the defendants.
AFFIRMED.
NOTES
[1] At this time, in June of 1978, plaintiff was performing his normal duties pursuant to Doctor Fresh's instructions. Doctor Fresh had on two occasions given plaintiff a nerve block injection in the scapular region which provided complete and immediate relief from the pain. This relief lasted at most two months during which time plaintiff apparently endured no pain. However, after the hammer incident, Doctor Fresh testified that nerve blocks were no longer effective means of relief.