408 So.2d 297 (1981)
Wilbert ELIE, Jr., Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 8552.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Kramer, Laird & Hammill, Bernard Kramer, Alexandria, for plaintiff-appellant.
Provosty, Sadler & deLaunay, Albin A. Provosty, Alexandria, for defendant-appellee.
*298 Before FORET, SWIFT and LABORDE, JJ.
FORET, Judge.
Wilbert Elie, Jr. brought this workmen's compensation action asserting that he is totally and permanently disabled and claiming benefits therefor. He alleged that his disability resulted from personal injuries suffered in an accident arising out of and in the course of his employment. Appellant's employer at the time of the accident, Avoyelles Wholesale Grocery Company, Ltd. (Avoyelles), and its workmen's compensation insurer, St. Paul Fire & Marine Insurance Company (St. Paul) were named defendants. Defendants sought a credit against any award of future compensation payments in an amount equal to any past compensation they may have paid to appellant, which was not due.
The trial court denied appellant's claim and he appeals from that judgment. The sole issue is whether the trial court erred in finding that appellant had recovered from his injuries and was no longer disabled.

FACTS
This action arises out of an accident which occurred on July 14, 1980, in Rapides Parish, Louisiana. Appellant was employed as a truck driver by Avoyelles and he and a helper were making a delivery of produce to one of Avoyelles' customers. Plaintiff alleges that he sustained an injury to his lower back while attempting to realign the rear door of his truck. He reported the accident to his supervisor after completing his run.
Plaintiff was directed to see Dr. Palmer Texada, which he did the next day. Dr. Texada examined and found him to be suffering from a moderate strain of the right infra-scapula and paravertebral muscles. Dr. Texada advised him to rest and told him that he could return to light work in four to five days. He returned to work on July 24, 1980 and was terminated on August 6, 1980, for reasons unrelated to the accident.[1] Thereafter, appellant's attorney referred him to a chiropractor and two medical doctors for evaluation and treatment.
St. Paul paid appellant compensation benefits of $103.00 per week from the date of the accident until December 8, 1980[2] and his medical expenses. Appellant instituted this action on December 23, 1980 alleging that he is totally and permanently disabled as a result of injuries suffered in the accident and that he is entitled to 662/3% of his weekly wages as disability benefits. He further alleged that defendants had failed to pay him the maximum benefits to which he was entitled and, thereafter, terminated payment of his benefits despite proof and notice of his disability. Appellant sought the statutory penalty of 12% of all amounts due him, together with attorney's fees, because of defendants' actions.

APPELLANT'S ALLEGED DISABILITY
Plaintiff contends that he is totally and permanently disabled as defined by LSA-R.S. 23:1221(2)[3]. Thus, the issue is whether he is unable "to engage in any gainful occupation for wages" within the meaning of LSA-R.S. 23:1221(2), supra.
In determining whether an employee is permanently and totally disabled, it is *299 not a prerequisite that he be absolutely helpless. If the evidence of his physical impairment and of other such factors as his mental capacity, education and training indicates that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, the injured employee is entitled to total disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to his residence. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
The claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Guidry v. Ford, Bacon & Davis Construction Corp., 376 So.2d 352 (La. App. 3 Cir. 1979); Soileau v. Bituminous Casualty Corporation, 348 So.2d 1313 (La. App. 3 Cir. 1977); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1 Cir. 1977). The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Guidry v. Ford, Bacon & Davis Const. Corp., supra; Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La. 1977).
The evidence concerning appellant's alleged disability consisted of his testimony and the testimony of certain members of his family, together with the testimony of his supervisor at Avoyelles. Also, the reports of Dr. Texada and Dr. Edward A. Norton, together with the deposition of Dr. John T. Weiss, were introduced in evidence.
Appellant is 36 years old and completed high school. He has worked as a painter, cement finisher and truck driver. He testified that he had no problems with his back prior to the accident. He stayed away from work for about one week after the accident and then returned to Avoyelles doing the same work he had done before. He claimed that his back hurt when he returned to work, but he admitted that he did not mention this to his supervisor, as required by company policy.
After being fired, appellant consulted with an attorney who referred him to R. A. Boisvert, a chiropractor, for treatment. He saw Boisvert five or six times and described the treatment given him as only aggravating his suffering.
Appellant testified that he tried to do some house painting after the accident but quit fearing that he would further injure his back. He also tried to do some cement finishing, but worked only one morning because his back and leg hurt. He admitted that since he had last seen Dr. Weiss on January 28, 1981 (approximately 2½ months before trial), he had not been to any other doctor nor had he been told to return for further treatment by any of the doctors he had seen.
Appellant's parents testified that they knew of no problems he had with his back prior to the accident. His father stated that he did not see him very often. His parents had no personal knowledge of any attempts made by appellant to return to work after the accident. Appellant was living with Ida Nelson at the time of the accident, and she testified that he complained of pain in his back after the accident and when he returned to work. She too stated that chiropractic treatments received by appellant only made his back worse. She had no personal knowledge of any attempt made by him to return to work.
Dr. Texada's report stated that appellant would be able to resume light work within four to five days after the date of the report, which was July 17, 1980. The report further stated that he suffered no permanent disability from the accident.
Dr. Norton's report is dated November 26, 1980. It relates Dr. Norton's findings after having treated appellant and concludes with the following:
"COURSE OF TREATMENT: The patient was seen in the office at regular intervals during which time he received medco sonlator treatment to his right *300 shoulder and lower back and left hip area along with muscle relaxants, analgesics and cortico steroid injections. Under this treatment, his complaints improved sufficiently to be controlled with simple analgesics, and he was discharged as having received maximum medical benefit on 11/28/80. It is my belief that there will be no permanent or residual disability as a result of this injury.

DIAGNOSIS: 1) Acute Thoracic and lumbo sacral strain
 2) Contusion, right shoulder."
(Emphasis provided.)
Dr. Weiss first saw appellant on October 1, 1980, approximately three months after the accident. Appellant related the facts surrounding the accident to him. However, he told Dr. Weiss that he tried to return to work, but worked only two or three days and was released from work. In fact, he had returned to work for two weeks before being released. Appellant stated to Dr. Weiss that he continued to experience some pain in his lower back and left leg. Dr. Weiss examined him and felt that he might have disc pathology. Dr. Weiss recommended a myelogram and scheduled it for October 14, 1980. However, appellant failed to report for the test at the time scheduled.
Dr. Weiss did not see appellant again until January 13, 1981, when a myelogram was performed. The results of that test were normal. Dr. Weiss had a number of other tests run, the results of which were also normal. Dr. Weiss last saw appellant on January 28, 1981, at which time appellant told him that he was no longer having any problems with his leg, but he did complain of a little discomfort in the low back area on extremes of flexion and extension. A neurological examination was essentially negative. Dr. Weiss felt that appellant had "improved quite a lot" since his last examination in October, 1980. However, Dr. Weiss recommended that appellant find employment in a job that would not require heavy lifting. His recommendation was based on the fact that appellant "was not real heavy built or extremely muscular".
Dr. Weiss opined that appellant had been suffering from a degenerative condition in his back connected with the normal aging processes. He felt that the accident may have aggravated this condition to a certain extent. However, he admitted that this was nothing more than speculation and that his opinion was based solely on the subjective complaints related to him by appellant. Finally, Dr. Weiss stated that he could find no true orthopedic abnormality, and he released appellant for full work.
Our review of the record convinces us that the trial court correctly found that appellant's disability ceased no later than January 28, 1981.[4]
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Appellant was terminated because he had driven one of the trucks in such a manner that its engine was ruined.
[2] The record is unclear as to the exact date on which appellant's workmen's compensation benefits were terminated. Defendants, in their answer, aver that appellant's benefits were terminated on December 8, 1980. However, the trial court, in its reasons for judgment, states that appellant's benefits were terminated on January 28, 1981.
[3] LSA-R.S. 23:1221(2) provides:

"(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
[4] See Footnote 2, supra.