430 So.2d 705 (1983)
Thomas Earl ATTAWAY, Sr., Plaintiff-Appellant,
v.
FARLEY'S GLASS CO., INC., et al., Defendants-Appellees.
No. 15254-CA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
*706 Roland V. McKneely, Jr., Bossier City, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for defendants-appellees.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
This is an action for worker's compensation benefits, medical expenses, penalties and attorney's fees. After a trial on the merits the district judge rendered judgment in favor of the defendants, Farley's Glass Co., Inc., plaintiff's employer, and Allstate Insurance Company, Farley's insurer, rejecting all of plaintiff's demands and dismissing this action. The plaintiff, Thomas Earl Attaway, Sr., appeals. We reverse and render judgment in appellant's favor.
This appeal presents three primary issues:
1) has plaintiff proven any disability;
2) if so, is plaintiff's claim for worker's compensation benefits barred by his dismissal for fighting; and
3) is plaintiff entitled to an award of penalties and attorney's fees.

The Facts
The plaintiff, Thomas Attaway, Sr., was 23 years old at the time of the trial. Attaway has a tenth grade education and has extensive experience working in the glass business.
On July 7, 1980, the plaintiff went to work at Farley's Glass Co., Inc., in Shreveport, Louisiana. The plaintiff's supervisor at Farley's was his father, J.W. Attaway. While at Farley's the plaintiff worked making insulated glass.
*707 To perform his job plaintiff was required to lift, carry and stack large sheets of glass. Plaintiff had to clean the glass which, because of its large size, required much stooping, stretching and reaching.
On November 24, 1980, while the plaintiff and a co-employee were moving a sheet of glass (60" × 130" weighing 170 lbs.) from a rack to a work table the co-employee stumbled causing plaintiff to twist his back. Attaway experienced a "cracking" in his back quickly followed by pain.
After the accident occurred in mid-afternoon, the plaintiff continued to work but could not bend over or lift because of the pain in his back. The following day the appellant experienced similar pain while trying to work and his father sent him to the company physician, Dr. Michael Asseff.
Dr. Asseff opined plaintiff had a lumbar muscle strain and prescribed pain medication and a back ointment. Attaway continued working after his initial visit to Dr. Asseff but he was unable to perform all his duties because of his back problems. A few days later Attaway again saw Dr. Asseff who referred him to Dr. W.W. Fox, an orthopedic surgeon.
Attaway was first seen by Dr. Fox on December 1, 1980. Dr. Fox examined Attaway and found tenderness and some muscle spasm at the L4-L5 level. Dr. Fox stated that plaintiff had an "acute moderately severe lumbar strain." Fox removed plaintiff from work duty and prescribed a muscle relaxant, a lumbosacral corset and Tylenol # 3. Allstate began making compensation payments to plaintiff in the amount of $163.00 per week.
Attaway next saw Dr. Fox on January 5, 1981. At that time Dr. Fox found the plaintiff sufficiently improved to return him to work on light duty. Attaway returned to work at Farley's doing light duty work and was paid his regular wage.
The plaintiff continued to work on light duty without difficulty or incident until February 2, 1981. That day appellant was attempting to show another employee, Dave Collingsworth, how to cut a piece of glass. The men disagreed on the way to perform the work and their disagreement flared into a very brief scuffle which was quickly ended when other employees separated them. The following day, February 3, 1981, Attaway and Collingsworth were both discharged. Plaintiff has not worked or earned any wages since.
Attaway next saw Dr. Fox on February 11, 1981. At that time Dr. Fox prescribed muscle relaxing medication and a new corset for Attaway.
Attaway returned to Dr. Fox on March 24, 1981. The plaintiff continued to complain of back pain and Dr. Fox found tenderness in the back area but no muscle spasm. Fox changed plaintiff's medication and was still of the opinion that plaintiff could do light work.
Attaway commenced this action on April 20, 1981.
The plaintiff saw Dr. Fox for the final time on July 21, 1981. On that date Fox released Attaway to return to work without limitations.
Following his release by Dr. Fox, Attaway, who was still experiencing back pains, began seeing Dr. Austin Gleason, another orthopedic surgeon. Dr. Gleason first examined Attaway on August 5, 1981. Though he found no muscle spasm, Dr. Gleason found a marked decrease in the range of motion in his back and positive straight leg raising test. He found plaintiff to have chronic back and left leg pain and prescribed an anti-inflammatory drug. It was Dr. Gleason's view that, as of August 5, Attaway could not have performed the full duties of his prior employment at Farley's.
The plaintiff returned to Dr. Gleason on August 26, 1981. On that date Gleason found plaintiff's condition improved.
Gleason saw Attaway again on September 22, 1981. At that time the doctor found plaintiff to be definitely better though still not ready for a return to the full duties of his former employment. Plaintiff was not able to do work requiring heavy lifting and prolonged stooping or bending. Dr. Gleason *708 opined that if plaintiff continued to improve that he might be able to return to full work in three to eight weeks.
On October 15, 1981, Dr. Gleason again examined Attaway and found his range of motion improved.
This matter was tried on October 22, 1981. The plaintiff produced evidence in the form of his testimony and that of his wife and father, as to his back problems. The thrust of the lay testimony is that appellant appears to be in pain most of the time, that his personality has changed and that he is unable to do many of the physical activities which he previously performed.
Appellant testified as to the back pain he had experienced. He also testified that the pain sometimes spread to his upper back and shoulders or to his legs.[1]
The plaintiff saw Dr. Gleason next on November 4, 1981. Because of the lack of objective symptoms to explain Attaway's continued complaints of pain, Dr. Gleason concluded that a complete workup on plaintiff, including a lumbar myelogram, was in order.
The myelogram was performed on January 25, 1982, and revealed the plaintiff's back to be within normal limits. On February 3, 1982, Dr. Gleason, finding no objective symptoms, discharged plaintiff for work without limitations.
The district judge, in his written reasons for judgment, found plaintiff to be less than totally credible because of inconsistent statements. The trial judge stated: "He saw various doctors and has given differing stories about when the pain of his injury became noticable and when he saw which doctors." The district judge went on to conclude that no compensation was due because none would have been due but for Attaway's discharge and his discharge was for a proper reason, fighting. The trial judge reasoned: "If Mr. Attaway had not been involved in the fight he would still be employed by defendant company today. However, the court finds that the dismissal was for a proper reason and no further compensation is due to plaintiff." The district judge made no specific findings as to disability or penalties and attorney's fees.

Issue # 1
We first consider whether the appellant has proven any compensable disability. Appellant argues that he is totally and permanently disabled under the "odd-lot" doctrine and alternatively contends that he is partially disabled.
The plaintiff in a worker's compensation case bears the burden of proving his worker's compensation claim by a preponderance of the evidence. Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4th Cir.1979); Elie v. St. Paul Fire & Marine Ins. Co., 408 So.2d 297 (La.App. 3d Cir.1981).
Under the odd-lot doctrine an employee is entitled to worker's compensation benefits for total, permanent disability if, because of the combination of his injury and his training, experience, age, education and other factors, he can perform no services other than those which are so limited that a reasonably stable labor market for them does not exist unless the employer or insurer shows the regular availability of suitable work. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
A worker is totally and permanently disabled if he can work only in substantial pain. Lemoine v. Employers Cas. Co., 378 So.2d 594 (La.App. 3d Cir.1979), writ refused, 380 So.2d 101 (La.1980).
A worker is partially disabled if he cannot perform the duties of his former employment but can still do other work. Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App. 2d Cir.1981); McElhaney v. Belden Corp., 376 So.2d 539 (La.App. 3d Cir.1979).
The question of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2d Cir.1982).
*709 The record in this case shows that appellant was temporarily totally disabled from December 1, 1980, until January 5, 1981, and partially disabled until February 3, 1982. The record does not support the appellant's contention that he is totally and permanently disabled.
The testimony of appellant, his family and the deposition of Dr. Fox clearly show that appellant was partially disabled through July 21, 1981.[2] Through that date the lay and medical evidence is uniform in its evaluation that plaintiff could not perform the duties of his former employment. Plaintiff's disability after July 21, 1981, is a much more troubling question.
The lay testimony at trial indicates that plaintiff continued to be unable to perform the duties of his former employment through the time of trial. The testimony by deposition of Dr. Gleason indicates that plaintiff was not able to return to work until February 3, 1982, contrary to that of Dr. Fox. Despite this conflict in the medical evidence a consideration of the totality of the evidence adequately establishes that the plaintiff's disability extended through February 3, 1982. The plaintiff has not shown by a preponderance of the evidence that his disability continued beyond that date.
There is no medical evidence to support a finding of disability beyond February 3rd; instead the medical evidence is that there was no disability beyond that date. Appellant's claim of continued disability rests entirely on the lay testimony at trial three months before his release by Dr. Gleason and his subjective complaints of pain to Gleason since that time. This lay evidence, partly stale and mostly subjective, is insufficient to offset the medical opinions of two orthopedic surgeons that appellant's disability had ceased and that he could return to work without limitations.
The appellant cites several cases, exemplified by Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977), for the proposition that he is entitled to a presumption of causation. However, Lucas and the similar cases cited by appellant do not further his case here because appellant fails to establish that there was any disability after February 3, 1982. In order for the presumption that disability resulted from the compensable injury to become operative the disability must be established. All the medical evidence reaches the conclusion that there was no disability after February 3, 1982. The plaintiff's subjective complaints standing alone cannot establish his disability by a preponderance of the evidence.
Because plaintiff has not established any disability beyond February 3rd, we need not consider whether the odd-lot doctrine would have been applicable.
Neither has plaintiff shown that he is totally and permanently disabled by pain. He has not shown by a preponderance of the evidence that because of his compensable injury of November 24, 1980, that he could work only in substantial pain after February 3, 1982.
We find that plaintiff was partially disabled from January 5, 1981, through February 3, 1982, and that he is entitled to benefits for partial disability under LSA-R.S. 23:1221(3). We also find that the employer is responsible for the cost of all necessary medical treatment undergone by the plaintiff for the treatment of his injury under LSA-R.S. 23:1203.

Issue # 2
We now consider whether the plaintiff's valid claim for worker's compensation benefits is, as the district judge found, barred because he was discharged for engaging in a fight.
*710 LSA-R.S. 23:1081 provides that an injury is not compensable if it is caused by the injured worker's willful intention to injure himself or another. The employer bears the burden of establishing this defense. R.S. 23:1081; Augustine v. Washington Parish Police Jury, 383 So.2d 1271 (La.App. 1st Cir.1980), writ denied, 386 So.2d 1379 (La. 1980).
The employer must show (1) premeditation or malice on the part of the injured employee and (2) a reasonable expectation that injury would result from the employee's actions. Armstrong v. Jefferson Disposal Company, 258 So.2d 213 (La.App. 4th Cir.1972), writ denied, 261 La. 532, 260 So.2d 318 (1972). An employee is not disqualified from benefits by his instinctive or impulsive acts even if he is to blame for his injury. Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961).
The incident between appellant and Collingsworth was no more than a brief scuffle. The evidence does not establish that the physical contact was initiated by the plaintiff and the only blow struck by him was in an attempt to dislodge Collingsworth's grip around his neck. The plaintiff testified that his back was not hurt in the incident and the defendants offered no evidence to show that Attaway's pre-existing back condition was aggravated or that any new injury was suffered in the scuffle. Neither did the defendants offer any evidence of premeditation or malice on the part of the employee. Under these circumstances § 1081 is clearly inapplicable.
We also hold that a worker cannot be deprived of compensation benefits because he was discharged, even for good reason, from a light duty job which he need not have accepted in order to be entitled to benefits. See Scott v. Sears, Roebuck & Co.
The district judge was clearly wrong in denying worker's compensation benefits because the plaintiff had been discharged for engaging in an altercation.

Issue # 3
Finally, we consider whether the plaintiff is entitled to an award of penalties and attorney's fees by reason of the insurer's actions.
An insurer must pay penalties and attorney's fees where it fails to pay a claim within 60 days of the receipt of proof of loss and a demand for payment where the failure to pay was arbitrary, capricious or without probable cause. LSA-R.S. 22:658.
On April 20, 1981, the plaintiff filed the petition in this action which specifically set out that plaintiff was disabled, had been discharged and had earned no wages. The insurer was being sent reports by Dr. W.W. Fox from which it should have been known that appellant was disabled. Despite the demand for payment and the information known to it the insurer did not resume benefit payments. There was no medical evidence that his disability was not continuing until Dr. Fox's examination of July 21, 1981.
This refusal to pay benefits for the period from February 4, 1981, through July 21, 1981, was arbitrary, capricious and without probable cause. The plaintiff is entitled to penalties on the benefits due for this period and an award of attorney's fees. We believe that an attorney fee award of $1,000.00 is reasonable for services rendered to collect these benefits.
However, we decline to award penalties on the amounts due after July 21, 1981. The record does not reflect that the insurer was notified of Dr. Gleason's opinion that Attaway was disabled after July 21, 1981, until Dr. Gleason's deposition was taken on September 24, 1981. Further, there were serious factual questions as to appellant's continued disability after July 21, 1981, as is illustrated by the conflicting medical evidence which precludes defendants from being arbitrary and capricious in their denial of benefits due subsequent to July 21, 1981.

Decree
The judgment appealed is reversed and judgment is rendered in favor of the plaintiff, Thomas Earl Attaway, Sr., and against:

*711 1) the defendants, Farley's Glass Company, Inc., and Allstate Insurance Company, in solido, for worker's compensation benefits at the rate of $163.00 per week from February 3, 1981, through February 3, 1982, with legal interest on each installment from the date due until the date paid;
2) the defendants, Farley's Glass Company, Inc., and Allstate Insurance Company, for medical expenses in the amount of $1,163.00, together with legal interest from the due date until paid;
3) Allstate Insurance Company for penalties in the amount of 12% of the benefits due from February 3, 1981, through July 21, 1981, and attorney's fees in the amount of $1,000.00, together with legal interest from date of judgment until paid.
All costs are taxed against the defendants, Farley's Glass Company, Inc., and Allstate Insurance Company.
NOTES
[1] The record was left open after trial for depositions of the doctors to be taken and filed.
[2] The record clearly establishes the date of the accident, that the plaintiff commenced having back pain on this date, and the dates that plaintiff saw the three doctors who treated him for it. Plaintiff's inaccuracies about the dates of these visits and the exact nature of his back pain when viewed in light of the totality of the record are insignificant. The discrepancies from which the trial judge concluded that plaintiff lacked credibility are exceedingly minor. We conclude that Attaway's credibility cannot reasonably be questioned on this basis and reject the trial judge's negative evaluation of plaintiff's credibility as clearly wrong.