FRED S. BOWES, Judge Pro Tern.
Richard Raymond appeals a judgment of the District Court in favor of the defendant State Farm Fire and Casualty Company, dismissing his suit in workman’s compensation. We affirm.
In his reasons for judgment, the trial judge skillfully outlined the pertinent facts of the case as elicited at trial, which we adopt:
The plaintiff, Richard P. Raymond, age 38, testified that he has a seventh grade education, that he did go to a special school to learn typewriter repairs, and that he does do repairs to motorcycles. In June or July of 1983, he went to work for the defendant Willow Park Apartments, doing general maintenance work. He says that on August 19th, while at the Patio Villa, he was supposed to be cutting grass and trimming and fixing the drains. While putting a Snapper Comet lawnmower in the trunk of a vehicle, the blade caught in the tailgate, causing him to shove it in. He says that he then felt a pop in his back but had no immediate pain; the pain started later. He saw Dr. Elias (who apparently owns the apartment complex) at his gun store on Admiral Doyle and told him about the problem. He believes that he also told Mrs. Joyce Delcambre, another employee, on that day, and she said she’d check on the insurance. She did not tell him anything about making a claim. He states that he hurt, went to see Dr. Mus-so, went to physical therapy, but that the insurance company would not reimburse him. It is noted that he has two prior compensation claims. He says that since the accident he has looked for work at several places but without success. He states that he would have to work in pain and they will not hire him. He does admit doing some motorcycle repair work at a place that he has just established in April. And he states that he cannot do heavy lifting or heavy work.
Mrs. Joyce Delcambre is an employee of the apartment complex and she is the manager. She states that in July of 1983 the plaintiff was employed at $1,000 a month as a maintenance man and that, on August 21st, the plaintiff’s wife told her that he had had some kind of accident. She said that she sent the required notice to State Farm and also to the Department of Labor. She states that the plaintiff’s wife also works for the apartment complex. She saw the plaintiff all the time and he was always complaining about his job. He said it was too much for one man and that he would quit. Apparently he was not enchanted with his job or his employer. He did make a claim for unemployment compensation after he was terminated, but this was contested on the grounds that he quit his work. He had only been with *766 the apartment complex for a very short time before his job ended.
Dr. G.P. Musso of New Iberia stated that he first saw the plaintiff on March 19, 1974, when he fell off a motorcycle, and he was treated for that and other injuries. He was again seen by the plaintiff on August 23, 1983, when the plaintiff claimed that he had injured himself by lifting a lawnmower in a vehicle. The plaintiff had pain in the lumbosacral area; x-rays were taken and an anterior spur was noted on the L 4-L 5 disc — the space was unequivocally narrowed. There was some spasm in the right muscle area, a pelvic tilt, which indicated muscle spasm, and limited the range of motion. Dr. Musso diagnosed an acute lumbosacral strain and recommended bed rest, muscle relaxants, pain, ultrasound and heat treatment.
On January 27, 1983, State Farm requested information from him.
On January 23, 1984, the plaintiff was seen again by Dr. Musso, complaining of back problems and tightness in the back, but the tests were negative. Dr. Musso recommended therapy. He was seen again on February 7, 1984, complaining of low back pain. Dr. Musso recommended an orthopedist but the plaintiff did not go, claiming that he had no money. Dr. Musso noted that the narrowing of the disc is not significant, that the plaintiff did not return as he was supposed to, claiming that he could not afford it; however, the first bill was paid. Dr. Musso’s original report dated September 1, 1983, indicated that the plaintiff could return to work, although he later felt that he should see an orthopedist.
Dr. Clinton Lewis is a radiologist who noted that there were no fractures to the plaintiff’s spine but that there was a disc narrowed at L 4-L 5, which he did not think was significant. He found no evidence of acute traumatic change and the spurs noted were pre-existing.
Michael Breaux testified that he was a self-employed private investigator who was employed to conduct surveillance of the plaintiff, and, on Thursday, June 7, 1984, he videotaped some of his activities. He saw the plaintiff unload a motorcycle from a truck at his business address. A videotape, about seven minutes long, showed the plaintiff working, basically climbing on a truck very easy, and using a chain block winch to unload a motorcycle. The plaintiff got out of the truck in a very facile way.
To these facts, we emphasize that Dr. Musso testified that the treatment in August of 1983 was the third (separate) time he had attended to the plaintiff on various workmen’s compensation claims. Further, it should be made clear that Mr. Raymond did not return to Dr. Musso between August, 1983, and January 27, 1984; and plaintiff received only three physical therapy treatments during that time, the last treatment on October 3, 1983. These bills were paid promptly by State Farm.
In Fourroux v. North-West Insurance Co., 462 So.2d 1327 (La.App. 3rd Cir.1985), the Court outlined the appropriate standard of proof in such cases:
“The law is clear that although procedural rules are construed liberally in favor of the claimant in a workmen’s compensation suit, the burden of proof nevertheless rests on plaintiff to prove his case by a preponderance of the evidence, as is required in other civil cases. [...]
The testimony as a whole must show that more probably than not a work-connected accident occurred, and that it had a causal relationship to the claimant’s disability.
The law is equally well settled that the testimony of a plaintiff alone in a workmen’s compensation case is sufficient to establish the occurrence of an accident, if there is nothing to discredit his account thereof and where his statements are supported by the surrounding circumstances.[emphasis added]
In evaluating the evidence, the Court should accept as true and uncontradicted testimony of a witness, even though the witness is a party, at least in the absence *767 of circumstances casting suspicion on the reliability of this testimony. ...
Our jurisprudence also requires that when the plaintiff has had several prior injuries to the same part of his body and has had considerable experience in mak-. ing workmen’s compensation claims, the Court will look with great suspicion on the asserted claim and will examine the claim with particular care, [citations omitted]
Considering the record as a whole, we agree with the trial judge in his further reasoning that:
Here we have a claim for compensation by a person who apparently was unhappy in his job and had only worked some 40 or 50 days in his employment. He claims to have suffered an accident although there are no witnesses to it. His medical testimony does not establish that he was in fact injured and the paucity of his visits to the physician indicates to this Court that if in fact there was an injury it was a mild one and that he has recovered. The testimony of Dr. Musso indicates that the plaintiff had been returned to work shortly after his first visit and this Court is inclined to believe that Dr. Musso is correct.
Applying the aforementioned standards of proof to the present facts, we find no manifest error in the findings of the learned trial judge. Plaintiff’s account of the accident is not supported by the surrounding circumstances, there are circumstances which tend to discredit his account thereof, and he has had considerable experience (3 times) in making workman’s compensation claims. Also, the 7-minute surveillance film of plaintiff’s agile activities, referred to in the trial court’s reasons for judgment, in unloading motorcycles and climbing in and out of a truck with no apparent difficulty, makes plaintiff’s claims to disability far less credible and no doubt influenced the trial judge’s credibility call against the plaintiff.
Appellant relies on the “Lucas” presumption enunciated in Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977) that:
A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Appellee correctly urges that for the presumption that a disability resulted from the compensable injury to become operative the disability must first be established. Attaway v. Farley’s Glass Co., Inc., 430 So.2d 705 (La.App.2nd Cir.1983). This he failed to do. The question of disability is determined with reference to the totality of the evidence, both lay and medical testimony. Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2nd Cir.1982).
It is well settled that a reviewing court must give great weight to factual conclusions of the trier of fact, particularly when they involve a determination of the credibility of witnesses. Thus a reviewing court should not disturb this factual finding in the absence of manifest error. Fourroux, supra; Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Considering the totality of the evidence, we find no error in the trial judge’s astute and logical conclusions that an injury was not established, or that if an injury did occur that it was a mild one from which plaintiff recovered quickly enough to return to work shortly after his first visit to Dr. Musso on August 23rd. Additionally, we find that plaintiff did not causally connect his later problems to any “accident” occurring on August 19, 1983.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff. •
AFFIRMED.