513 So.2d 530 (1987)
R.T. JACKSON, Plaintiff-Appellee,
v.
GEORGIA CASUALTY AND SURETY COMPANY and Robert Lee McMillian, Jr., Defendant-Appellants.
No. 19,011-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
Writ Denied November 30, 1987.
*531 D. Scott Brown, Mansfield, for defendant-appellants, Georgia Cas. and Sur. Co. and Robert Lee McMillian, Jr.
Watson, Murchison, Crews, Arthur & Corkern by Ronald E. Corkern, Jr., Natchitoches, for plaintiff-appellee, R.T. Jackson.
Before SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
Plaintiff brought suit for worker's compensation benefits. The trial court awarded him total permanent disability benefits, penalties and attorney's fees for arbitrary and capricious actions on the part of the defendant-insurer, reimbursement for medical travel expenses, and by amended judgment, awarded defendants a credit for social security disability benefits received by plaintiff effective from the date of judgment. We amend the trial court judgment and affirm as amended.

FACTS
Plaintiff in this action is R.T. Jackson, a 53-year old logging and pulpwood employee residing in DeSoto Parish. Defendant-appellants are plaintiff's employer, Robert Lee McMillian, Jr., d/b/a McMillian Logging and Pulpwood Contractor, and its worker's compensation insurer, Georgia Casualty and Surety Company.
Plaintiff worked for McMillian Logging and Pulpwood Contractor for a period of fifteen years. In December of 1982, he was injured while cutting down a tree. It somehow became entwined with a smaller tree and swung around and broke plaintiff's left leg in three places.
After the incident, Mr. Jackson was taken to Dr. Taylor in Mansfield, Louisiana. He was x-rayed and the decision was made to take him to Highland Hospital in Shreveport, Louisiana. Mr. Jackson remained in Highland Hospital for two weeks during *532 which time surgery was performed on his left leg and ankle by Dr. Gordon Mead. He remained in a cast for a period of nine months and continued under the care and supervision of Dr. Mead until his discharge on May 24, 1985. After his discharge, Mr. Jackson attempted to return to work at a different logging company. However, he experienced swelling of his ankle and was unable to work past noon of the first day.
As a result, the plaintiff visited an orthopedist, Dr. John Sandifer, in Natchitoches, Louisiana, on July 5 and July 15, 1985. Dr. Sandifer responded to the plaintiff's complaints of pain and swelling with an anti-inflammatory agent and fitted plaintiff with a small brace. Dr. Sandifer stated that in his opinion Mr. Jackson would have difficulty performing the tasks necessary to his occupation.
At the request of defendant-appellant, Georgia Casualty, plaintiff again saw Dr. Gordon Mead on October 4, 1985. At that time, Dr. Mead reached the same conclusions relative to plaintiff's condition as he had in the prior examination which had resulted in the release of plaintiff.
Plaintiff received benefits of $166.67 per week from the time of the injury through June 1, 1983. After this time, however, he received benefits of $142.81 per week until April 24, 1984, when his payments were terminated.
Plaintiff filed suit seeking (1) benefits and medical expenses accruing subsequent to the April 24th termination date, as well as any benefits due before this time; (2) travel expenses incurred from the time of the injury to the present; and (3) penalties and attorney's fees for the alleged arbitrary and capricious failure of Georgia Casualty to pay travel expenses and the full amount of benefits due, as well as the premature termination of benefits.
The trial court rendered judgment in favor of plaintiff, Mr. Jackson, finding that he was permanently and totally disabled. It was ordered that benefits of $166.67 per week be paid from December 15, 1982 through the period of disability subject to a credit for amounts paid. The trial judge additionally awarded medical expenses as well as travel expenses. Finally, after a determination that the defendants were arbitrary and capricious in reducing and discontinuing benefits and in failing to issue travel expenses, penalties and attorney's fees were awarded.
By amended judgment, the trial court ordered that defendants be entitled to a credit for social security benefits received by plaintiff. This credit was to run prospectively "from the date of the execution of [the] amended judgment."[*]
The appellants assign as error the trial court's finding that Mr. Jackson is permanently and totally disabled and its finding of arbitrariness on the part of Georgia Casualty and Surety Company. Additionally, appellants assign as error the ruling that defendants were entitled to a credit for social security benefits received by plaintiff from the date of finality of the judgment, as opposed to the date of judicial demand.

DISABILITY
Defendant-appellant contends that the trial court erred in its finding that Mr. Jackson was totally and permanently disabled. We disagree.
The plaintiff in a worker's compensation case bears the burden of proving his claim by a preponderance of the evidence. LaPrarie v. Liberty Mutual Insurance Company, 463 So.2d 908 (La.App. 2d Cir.1985), Attaway v. Farley's Glass Company, Inc., 430 So.2d 705 (La.App. 2d Cir.1983).
The question of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Henson v. Handee Corporation, 421 So.2d 1134 (La.App. 2d Cir.1982).
On appellate review, the trial court's factual findings concerning work-related disability should be given great weight and *533 should not be disturbed where the evidence before the trier of fact supports a reasonable factual basis for the trial court's finding. Culp v. Belden Corporation, 432 So.2d 847 (La.1983); Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
A finding of permanent and total disability under the worker's compensation law as it read at the time of plaintiff's injury mandates a finding that an employee is unable to "engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged." LSA-R.S. 23:1221(2).
The jurisprudence of Louisiana employed the "odd lot" doctrine as a guiding theory in the determination of permanent total disability at the time of this accident. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). Professors Malone and Johnson in their treatise on worker's compensation define the "odd lot" theory.
Simply stated, this doctrine states that a claimant may be considered totally disabled if, after his injury, he's considered an "odd lot" in the competitive labor market, i.e., that he may be capable of holding various jobs from time to time, but that the kind of work he may perform is so limited in quality, dependability or quantity that a reasonably stable market for that work does not exist.
13 W. Malone, A. Johnson, Civil Law Treatise, § 276, p. 621 (1980).
A plaintiff must show that his physical impairment, mental capacity, education, training, age, availability of employment in his area and any other relevant factor preclude him from performing the substantial and material part of some gainful work or occupation with reasonable continuity. Oster v. Wetzel Printing, Inc., supra; Henson v. Handee Corporation, supra.
Additionally, if a worker's pain appreciably limits the type of work available to him and greatly diminishes his ability to compete in the labor market, he may be treated as an odd lot worker and may be entitled to total disability benefits. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); LeBaron v. Louisiana Pacific Corporation, 434 So.2d 496 (La.App. 2d Cir.1983), writ denied 440 So.2d 758 (La.1983).
It is the opinion of this court that Mr. Jackson falls within the "odd lot" category under the worker's compensation law as it existed at the time of the accident.
The medical testimony taken in its entirety reveals that Mr. Jackson in fact sustained serious injuries to his left leg and ankle. Mr. Jackson was diagnosed by Dr. Gordon Mead, an orthopedic surgeon, as experiencing a twenty percent permanent partial disability on March 8, 1984, but he opined, however, that Mr. Jackson should be able to return to work doing essentially the same thing as he did before the accident. A follow-up visit in May of 1984 revealed, in the opinion of Dr. Mead, the same disability, although Mr. Jackson continued to complain of pain.
The final visit by Mr. Jackson on September 24, 1985, upon the request of defendants' counsel, resulted in the same conclusions. Dr. Mead testified that x-rays revealed no degenerative arthritis. Dr. Mead, however, stated that pain was not inconsistent with the injury received by Mr. Jackson in light of the swelling of his ankle.
The testimony of Dr. Sandifer, an orthopedic surgeon who examined and x-rayed Mr. Jackson's leg in July of 1985, is in direct contrast with that of Dr. Mead. Dr. Sandifer's examination revealed probable degenerative arthritis which would account for the pain and swelling. He prescribed an anti-inflammatory drug and an ankle brace and was of the opinion that Mr. Jackson would have trouble walking on uneven ground and standing for long periods of time. He therefore thought the plaintiff would have difficulty engaging in his occupation. He additionally reasoned that the original diagnosis by Dr. Mead may have been correct but that there had been changes which at the time of his examination rendered Dr. Mead's diagnosis inappropriate.
*534 Clearly, the conclusions reached by both physicians were inconsistent. The trial court may, however, accept or reject an opinion expressed by a medical expert depending upon what his impressions are regarding qualifications, credibility and testimony. Rodriquez v. American International Insurance Company, 394 So.2d 621 (La.App. 3d Cir.1981). The trial judge in this case weighed the testimony of both physicians and reviewed the totality of the testimony including both lay and expert. The trial judge accepted the findings of Dr. Sandifer as well as the testimony of the plaintiff's lay witnesses.
The testimony of the lay witnesses and the plaintiff reveals that Mr. Jackson cannot read or write and received less than a first grade education. He is capable of driving a car but is unable to drive a logging truck. Mr. Jackson and his sister indicated that after Mr. Jackson's release from Dr. Mead on March 24th, he obtained employment in the logging industry with another company. However, he was able to work only a half day and returned home in pain. Both plaintiff and his sister testified that on that date, as well as at other times, Mr. Jackson experienced pain and swelling of his ankle and could not stand for prolonged periods of time. This testimony was corroborated by that of Mr. Louis Jones, a friend of Mr. Jackson, who stated that on one occasion, Mr. Jackson was unable to help him cut wood because he could not remain standing for any length of time.
The testimony of Dr. Richard Galloway, an expert in the field of rehabilitative counseling, indicated that Mr. Jackson was unfit to continue in the type of work to which he was accustomed. Additionally, he was of the opinion that based upon Mr. Jackson's educational training, age and social abilities, he would not be fit for employment in any other locally available field.
Our review of this case causes us to conclude that the record reasonably supports the ruling of the trial court that the plaintiff suffered permanent and total disability. We therefore find that the trial court's conclusion in this regard was not manifestly erroneous.

PENALTIES AND ATTORNEY'S FEES
Appellant next contends that the trial judge erred in assessing penalties and attorney's fees based upon the arbitrary and capricious (1) termination of benefits as of March, 1984, (2) reduction in benefits from $166.67 to $142.81 after June 1, 1983, and (3) failure to pay travel expenses.
The law relevant to the assessment of penalties and attorney's fees in effect when this accident occurred is LSA-R.S. 22:658, which reads as follows:
§ 658. Payment of claims, policies other than life and health and accident; penalties
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
Plaintiff therefore must demonstrate that the defendant did not have a *535 legitimate basis for denying or terminating the benefits, as well as travel expenses. Thomas v. McInnis Brothers Construction, Inc., 401 So.2d 522 (La.App. 2d Cir.1981), writ denied 406 So.2d 608 (La.1981).

Termination of Benefits
When an insurer's termination of worker's compensation is based on competent medical evidence, the insurer's action is not arbitrary and capricious so as to warrant imposition of penalties and attorney's fees. Crawford v. Al Smith Plumbing and Heating Service, Inc., 352 So.2d 669 (La.1977); Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3d Cir.1974).
If subsequent to an initial optimistic medical report, however, an insurer receives medical information showing that the claimant is disabled, the insurer may not avoid penalties for arbitrary non-payment by blindly relying on the initial report. Walker v. Gaines P. Wilson and Son, Inc., 340 So.2d 985 (La.1976); Carter v. American Mutual Liability Insurance Company, 386 So.2d 1072 (La.App. 3d Cir.1980).
In his report, Dr. Mead recommended a twenty percent permanent partial disability and felt that Mr. Jackson should be able to return to the same type of work he had engaged in before the accident. A follow-up report issued by Dr. Mead shortly before trial reached the same conclusion.
The testimony of Dr. Sandifer and his findings, however, differ from that of Dr. Mead. Dr. Sandifer determined that Mr. Jackson would have substantial difficulty in returning to the same type of work. Clearly, as the testimony of Mr. Zonie Harris, the insurer's representative, revealed, the insurance company terminated benefits based upon the report of Dr. Mead. Although the report of Dr. Sandifer conflicted somewhat with Dr. Mead's report, there is no evidence in the record demonstrating that Georgia Casualty was made aware of Dr. Sandifer's findings nor put on notice of the possible change in the condition of Mr. Jackson.
We are therefore unable to say that Georgia Casualty acted arbitrarily, capriciously or without probable cause in its termination of benefits and find that the trial court erred in so finding. It will be necessary to amend the judgment to delete that portion which awards penalties for arbitrary and capricious termination of benefits.

Reduction of Benefits
If plaintiff does not receive all compensation benefits to which he is entitled under the evidence available, the arbitrary decision to reduce benefits is a flagrant violation of an insurer's statutory duty. The penalty provision of the worker's compensation law was enacted specifically to prevent such conduct. Duffour v. Hartford Casualty Insurance Company, 359 So.2d 720 (La.App. 4th Cir.1978).
In the instant case, Mr. Harris's testimony reveals that the payments were reduced as a result of an audit. The salary figures subsequently supplied by Mr. McMillian, he noted, did not reflect those initially reported by the employer. As a result, the benefits were reduced. Defendant attempted to introduce additional evidence concerning the circumstances surrounding the reduction in benefits. However, this evidence was successfully excluded by plaintiff, predominately on hearsay objections.
As we have previously noted, the burden of proving the arbitrary and capricious nature of a defendant's conduct in a compensation case falls on the plaintiff. Thomas v. McInnis Brothers Construction, Inc., supra. Under the instant circumstances, we cannot determine that the reduction was arbitrary and capricious. The record simply reflects that the reduction resulted from additional salary figures received from Mr. McMillian, plaintiff's employer. There is no other information in the record concerning the reduction. Under these circumstances, we determine that the trial court was clearly wrong in deciding that the plaintiff had proven that the defendant's action in reducing the level of compensation was arbitrary and capricious. It *536 will likewise be necessary to amend the judgment in this respect.

Travel Expenses
A claimant's travel expenses in seeking medical attention form a part of the medical expenses claim and are subject to the statutory provisions of LSA-R.S. 22:658. Rodriquez v. American Intern Insurance Company, supra; Jack v. Fidelity Casualty Company of New York, 326 So.2d 584 (La.App. 3d Cir.1976), writ denied 330 So.2d 295 (La.1976); Bonnette v. Travelers Insurance Company, 367 So.2d 1261 (La.App. 3d Cir.1979).
Plaintiff does not contend that Georgia Casualty received a claim for travel expenses. Indeed, Mr. Harris testified that no "demand" for travel expenses was made upon the insurance company. Mr. Harris conceded that he was aware that Mr. Jackson was in a hospital in Shreveport on two occasions, and further conceded that it was a policy of Georgia Casualty to send a person who visited an out of town doctor a travel claim form without demand being made by the injured party. He testified that in this instance the failure to send the forms to Mr. Jackson was simply an oversight.
There is jurisprudence to the effect that demand is unnecessary to render a failure to pay travel expenses for medical treatment arbitrary and capricious. Norris v. Southern Casualty Insurance Company, 342 So.2d 874 (La.App. 3rd Cir.1977), writ denied 344 So.2d 670 (La.1977).
However, we believe the better rule is that an insurer cannot be held to be arbitrary and capricious for failure to reimburse medical travel expenses unless it has received some statement or demand from the claimant in that regard. Rodriquez v. American Intern Insurance Company, supra; Burgess v. Southern Casualty Insurance Company, 203 So.2d 434 (La.App. 3rd Cir.1967). We therefore determine that it will also be necessary to amend the trial court judgment awarding penalties on travel expenses awarded to the plaintiff.
Accordingly, since we have determined that the appellant was not arbitrary and capricious in any respect, it will likewise be necessary that the trial court judgment be amended to delete the award for attorney's fees.

Social Security Offset
Mr. Jackson began receiving social security benefits approximately six months before trial began. Because of the receipt of these benefits, the trial judge, in an amended judgment, held that Georgia Casualty was entitled to a credit for these benefits pursuant to LSA-R.S. 23:1225, effective from the finality of the judgment.
Georgia Casualty contends that the trial court erred in its finding that credit for social security benefits should be received only from the date of the finality of the judgment.
LSA-R.S. 23:1225 provides that worker's compensation benefits shall be reduced by federal old age, survivor's, and disability insurance benefits when the combined federal and worker's compensation benefits will otherwise cause a reduction in the federal benefits. In order for the employer to benefit from this statute, it must make a demand and the payments can be reduced prospectively only from the date that it exercises its right to do so. Lofton v. Louisiana Pacific Corporation, 423 So.2d 1255 (La.App. 3d Cir.1982); Jackson v. Maloney Trucking and Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983); Sanchez v. Viccinelli Sheet Metal and Roofing Company, Inc., 473 So.2d 335 (La.App. 1st Cir.1985), writ denied 477 So.2d 1124 (La.1985).
Georgia Casualty filed an amended answer in the trial court requesting the credit to which it believed it was entitled under the provisions of LSA-R.S. 23:1225. Clearly, this is the point at which the right to receive the offset was exercised. We therefore find the trial court in error in determining that the social security credits were to be calculated from the date of the finality of the amended judgment, and we will amend the trial court judgment in that respect.

*537 DECREE
For the reasons aforesaid, the judgment appealed from is hereby amended to eliminate therefrom that portion thereof that awards penalties and attorney's fees and to reflect that plaintiff's demands for penalties and attorney's fees are rejected; the aforesaid judgment is further amended to reflect that the credit awarded the defendants for social security benefits received by the plaintiff are to be effective from the date of judicial demand therefor, October 18, 1985. In all other respects, the judgment appealed is affirmed at appellants' cost.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[*] We presume that this phrase was intended to mean that the credit was due from the date of the finality of the judgment.